## SAM BASSETT LUMBER CO. v. CITY OF HOUSTON.

### No. 11756.

Court of Civil Appeals of Texas.   Galveston.

March 28, 1946.

Rehearing Denied April 25, 1946.

Bracewell & Tunks and Searcy Bracewell, all of Houston, for appellant.

Lewis W. Cutrer, City Atty., and Abe Levy, Asst. City Atty., both of Houston, for appellee.

CODY, Justice.

This was a suit by the City of Houston against appellant, a corporation which conducts a lumber yard in Houston, to recover a personal judgment for the taxes which were assessed against some of appellant's personal property for the years 1933 and 1934, and for the years 1936 to 1944, inclusive.

Appellant defended upon the grounds, (1) that the taxes sued for were not validly assessed because of a discriminatory system of assessing which was followed by the city, and (2) that if the taxes sued for were not void in their entirety, the same should be abated to the extent of fifty per cent of their amount. The appellant pled by way of further defense (3) that the city was without power to prosecute a suit for taxes which had been delinquent for four years or more at the time such suit was instituted; and pled specially (4) that the taxes were invalid because of the acts and omissions in making the assessments varying in character as applied in the several different years.

At the conclusion of the evidence the court instructed the jury to return a verdict for the city for the full amount of the taxes sued for, and from the judgment rendered on such verdict appellant prosecutes this appeal.

Appellant predicates its appeal upon 17 points, but has grouped said points for presentation here into four groups. These four groups—slightly edited for brevity—are as follows:

I. That the taxes sued for were void because of the lack of any reasonable effort to pursue the taxing system established by law, and such lack of any reasonable effort appeared from the evidence as a matter of law; or at least an issue of fact was raised by the evidence as to whether a reasonable effort had been made to follow the statutory or charter taxing provisions.

II. That the school taxes for the year 1933 were barred by the ten year statute of limitations; and that the charter provisions denying the city the power to sue for taxes that have been delinquent for more than ten years are valid, but if invalid, the

provisions which impose personal liability for such taxes are also invalid.

III. That the tax rendition sheets were insufficient on which to predicate unrendered assessments, and the city's "tax roll card" was wholly insufficient as a tax roll, as contemplated by the charter and ordinances of the city.

IV. That the court erred in overruling appellant's special exceptions to the city's petition.

The material evidence upon the trial was to the effect:

That the city council has never prescribed any form of assessment sheet for use by the tax office for assessing either the rendered or unrendered property. That the assessment sheets have been changed several times, and vary widely from the forms used by the State. That the form of assessment sheets, and the changes that have been made therein, have been devised by the city tax assessor, or under his authority.

That some of the area of the City of Houston (and of the Houston Independent School District) is acreage adapted to and used for farming and stock raising. That no effort has been made to assess taxes against any of the numerous livestock within the taxing area involved. Likewise no attempt has been made to assess taxes on bicycles, sewing machines, clocks, musical instruments, household furniture, or the jewelry and silver plate of the residents of the city. That there was on deposit in the banks of Houston on the first day of January of each of the years involved more than $150,000,000 belonging to residents of the city, subject to taxation. That no attempt was made to assess any of such property and no attempt has been made to assess the merchants of the city on their money on hand or on deposit, or on their stocks, bonds, accounts receivable or notes receivable, or other intangible property. And so with respect to public utilities, which in each instance filed reports showing the amount of their cash and bills receivable on hand on the first of the year of each of the years here involved; and which showed that more than $5,000,000 of such property was taxable for each of the years here involved.

Furthermore, the real estate mortgage records showed that for said years mortgages were filed varying from the lowest total of $28,235,268, shown for one of said years, to the highest total of $248,387,538, shown for another of said years. And that the vast amount of said mortgage indebtedness belonged to residents of the city, and were subject to taxation. That no attempt was made to assess said property, and none was assessed unless rendered by the owner thereof, on such owner's initiative.

The city's evidence advanced various persuasive reasons for not assessing such personal property. No attempt was made to assess household furniture because of the time and expense that would be involved. No attempt was made to assess money in the banks on the first of the year because this would drive away the money. No attempt was made to tax trust estates because that would raise the issue of the failure to tax similar types of taxable property. No attempt was made to tax real estate mortgage notes because that was regarded as bringing about double taxation. That to tax the cash and accounts of the Texas oil companies would discriminate against them in favor of foreign oil companies. That the policy of the city was to build a tax structure which provided an equitable distribution of the costs of municipal services.

Appellant promptly paid all city taxes on its real estate. And its president, Mr. Bassett, testified that he thought the assessments on real estate fairly equal and uniform, but refused to pay the company's personal property tax because he didn't "consider that they (the taxing authority of the City) made everybody pay, and I don't see any reason why I should pay a personal property tax if it was not levied against everybody and no effort was made to levy it against everybody." Appellant made no complaint that, and it was made clear by the evidence that, the city had not assessed any type of appellant's personal property except such types as it assessed in the hands of all other taxpayers. That is, the city did not assess appellant's money on hand or on deposit, or bills receivable, etc. Nor does appellant contend that the assessments made on its personal property

were in any respect out of line with assessments made on other like property belonging to other taxpayers.

In 1915 the then plan of taxation followed by the City of Houston came before this court on an appeal from an injunction which restrained its enforcement. In the plan then followed by the city, land without improvements was assessed at 70% of its value, and the improvements thereon at 25% of their value, stocks of merchandise at 50% of their value, whereas the following types of personal property were omitted from taxation; household goods, money, stocks, bonds, mortgages, notes, credits, and other similar property. City of Houston v. Baker, Tex.Civ.App., 178 S.W. 820, writ refused. It was there held that such plan of taxation clearly violated Const. Art. 8, Section 1, Vernon's Ann.St., requiring taxation to be equal and uniform, and the action of the trial court in restraining its enforcement was sustained. The court there held that the remedy which was favored by the courts on behalf of persons who were injuriously affected by a discriminatory plan of taxation was a remedy to prevent such a plan from being operated, such as by mandamus and injunction.

It is evident that, during the years here involved, the same types of personal property were not assessed as escaped taxation in the plan reviewed in the Baker case. And, while the point is not before us, it would seem that, had appellant undertaken to have prevented such plan from being put into operation before the taxes were assessed, it would have been entitled to such remedy. In any case, the authority of the Baker case has never been questioned. But it does not follow because assessments have been made in violation of the constitutional provision that such assessments are void, even where such unequal assessments were intentional.

In the City of Wichita Falls v. Taxman Refining Co., Inc., Tex.Civ.App., 74 S.W.2d 524, 530, writ refused, it was held that the right of a property owner to relief against an assessment made in violation of the provision for equal and uniform taxation is limited to relief against so much of the tax which was assessed as was in excess of the amount of tax properly assessable, upon an equality basis, which is the limit expressly fixed in Art. 7329, Subdivision 3. That "the government does not lose its rights to taxes justly owing on one parcel of property by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable."

The material facts in the Taxman case were the same as those in the instant case. There the provisions of the city charter relative to taxing provisions were in all material respects the same as those of the charter provisions of the City of Houston. And there the same types of personal property were not assessed for taxation. True, the City of Wichita Falls was suing to recover taxes on real estate, whereas here the suit is to recover the amount of taxes due on personal property. But there is no question but that the requirement that taxation be equal and uniform applies the same to personal as to real property. The Taxman case was followed in Howth v. City of Beaumont, Tex.Civ.App., 118 S.W.2d 350, and Lubbock Hotel v. Lubbock Independent School District, Tex.Civ.App., 85 S.W.2d 776. And, as a writ was refused by the Supreme Court, such ruling is now the settled law of the state.

It follows that appellant was not entitled to have the assessment declared void, but was limited to having only so much, if any, of the assessments which were shown by it to be excessive, abated. We have concluded that the trial court correctly ruled that appellant failed to show any basis for the rendition of a judgment abating its taxes in any specific sum. Appellant contends that the evidence showed that 50% of the taxable property was not assessed, or at least the jury might have so found from the evidence. This seems to be conjectural, but assuming this was true, there seems to be no ground for allocating such excess exclusively to the relief of the types of personal property which were assessed. Furthermore, there seems to be no evidence to support the conclusion that appellant was entitled to such relief, because it appears that it was the owner

also of the types of personal property which were not assessed.

If a taxpayer refrains from seeking the remedy of injunction or mandamus, he is relegated to the remedy of proving the amount of excess, and seeking abatement thereof. Appellant failed to show any basis for any specific abatement. And we overrule its first group of points.

■ Appellant contends that the city was without authority to sue for taxes which have been delinquent for more than four years at the time suit therefor is instituted, because its charter provides in Article 3, Section 8, in part, as follows: "Provided, however, that any delinquent taxpayer shall have the right to plead in any court and to rely as a defense upon the statute of limitation of four years in any suit brought for taxes alleged to be due the City of Houston."

A like provision of the charter of the City of Beaumont has been held in an opinion by the Commission of Appeals to be invalid and unconstitutional, and appellant is in error in believing that such opinion was not adopted by the Supreme Court. City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202, 205. The court there held: "But, when the state itself steps in and makes a general law and applies such law to all cities of a certain class, then we submit that no city of the same class is authorized under our Constitution, to enact contrary legislation. * * * In other words, the Legislature has said that no delinquent taxpayer can defeat a city tax upon any plea of limitation." We believe that the Fall case finally settled that a city may not provide that limitation of four years may be pled in bar of a·suit for city taxes. Such decision clearly intended to do so.

■ Appellant further contends that, if the limitation provision of the charter as to suits for taxes which have been delinquent for four years is held void as being unconstitutional, the provision imposing personal liability for taxes on personal property must also fall. The provision so imposing personal liability is in the same section of the charter, but in a different paragraph from that allowing a plea of the four years' statute of limitation to be made to tax suits. If the two provisions are severable, the fact that one is unconstitutional does not make the other unconstitutional. We think they are severable. In order to strike down the personal liability provision we must conclude that it would not have been enacted, had it been known that the other provision was void. "Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other. * * * Cooley Const.Lim. §§ 177, 178." See San Antonio Ind. School District v. State, Tex.Civ.App., 173 S.W. 525, 529, writ refused.

Appellant further contends that the school taxes for the year 1933 were barred by the ten year statute of limitation, which it seasonably pled.

Article 7298, which denies the right to delinquent taxpayers to plead limitation in a suit for taxes by the State, and certain enumerated political subdivisions of the State exercising the taxing power, was amended in 1931 to allow the ten year statute to be pled against a suit by a School District. Vernon's Ann.Civ.St. art. 7298. By force of said article, as amended in 1931, the Legislature purported to authorize a taxpayer to plead the ten year statute of limitation to a suit for taxes brought by a School District.

■ It is appellee's contention that the Legislature was without authority to enact such amendment in 1931, and that it was not until November 8, 1932, that Section 55 of Art. 3 of the Texas Constitution was so amended as to permit the Legislature to authorize such plea of limitation. If the Constitution forbade the Legislature to authorize a plea of limitation to a tax suit by a School District at the time said amendment was made in 1931, it requires no citation of authority to support the proposition that no subsequent grant to the Legislature of power, to allow a plea of limitation to a tax

suit, would make valid an act passed by the Legislature prior to such grant.

We are constrained by the opinion of the Supreme Court in Olliver v. City of Houston, 93 Tex. 201, 54 S.W. 943, to hold that the aforesaid section of the Constitution prohibited the Legislature from authorizing a plea of the statute of limitation in suits by such a subdivision of the State as a School District until same was amended in 1932. So we are forced to hold that the amendment to Art. 7298 allowing such plea of limitation to be filed is void.

We overrule appellant's second group of points.

The taxes for 1935 are not here involved. To make out its case, the city introduced in evidence the sheets of the assessment roll showing thereon the assessment against appellant for goods, wares, and merchandise for the years 1933 and 1934, which showed the valuation thereon under the column designated thereon "Personal and miscellaneous", the amount of the tax, and other items. The sheets were signed by the assessor and collector for said years. Like sheets were introduced for the years 1936-1941, except they were not signed by the assessor and collector. However, in connection with each such sheet was introduced the certification of the assessor and collector covering such sheet, which certificate followed the form prescribed in the City Code. Taking such certification for the year 1936 as illustrative of the contents of those for the years 1937-1941, it was dated November 27, 1936, addressed to the mayor and city council, and certified that the assessment roll for the current year had been completed in accordance with the charter and ordinances, and that all calculations shown in the roll were correct; that said assessor and collector had signed his name and certified to the assessment roll as provided for by the ordinances of the City of Houston; that the total value of all the property inventoried in the roll is correct, and amounted to $283,381,590; that the total taxes levied on such property aggregated $5,667,631.80. It was signed and sworn to.

Like certificates by the assessor and collector were put into evidence covering the years 1942, 1943, and 1944. But for such years, instead of assessment tax roll sheets, assessment "tax roll cards" were used. These cards showed no other taxpayer's name except that of appellant, and reflected only assessments on personal property. The evidence showed that "tax roll cards" were in use to cover real estate assessments, with which we are not here concerned. The "tax roll cards" for said years showed the value of the merchandise appellant had on hand on the first day of January for each of said years.

The city also introduced in evidence the rendition sheets for each of the years involved. No question is raised by appellant for the rendition sheet covering the year 1934, for it rendered its property that year, and signed the rendition sheet. But the same form of rendition sheet was used for the years appellant did not render its property as was used for the year that it was rendered. The same was signed by a deputy assessor and collector, and sworn to. Such form was not well suited for use in assessing unrendered property, for it did not in·terms state that the inventory contained a correct list of the property subject to taxation in the city and School District for the year designated, known as the property of appellant, and which property had not been listed with the assessor and collector for the year designated, and that the assessor and collector assessed said property in accordance with the provisions of the charter and ordinances regulating the assessment of unrendered property. That is to say, the assessment sheets bore no certificate at all, but were signed by the assessor and collector, by deputy, who either signed the assessor's name, or signed a blank space under which said name had been printed.

We are not stating any of the procedure in connection with the appraisal and assessing by the city which is not complained of.

Art. III, Section 14, of the City Charter provides, in part: "No error or irregularity in any assessment roll, tax book·or document relating to the levy, assessment, * * * shall in any manner affect or impair the validity of any tax, or affect the proceedings for the collection thereof; but

every such assessment shall be liberally construed to effect the purposes and objects of this article in determining the validity thereof."

The "tax roll card" system was introduced and substituted for the system in which sheets formerly were used (upon which many names of taxpayers were listed), for convenience of accounting. This was done pursuant to an ordinance. But after the "tax roll card" system was introduced, the "tax roll cards" were treated as the sheets had formerly been treated, in that they were certified to the mayor and city council by the assessor and collector.

■ The "tax roll card" system was we think under the evidence shown to be a sufficient tax roll as contemplated by the charter and ordinances of the City of Houston. The irregularities complained of by appellant were, we think, but failure to follow provisions which were directory and not mandatory. The assessment sheet for the year 1933 we think shows on its face that the assessment for said year was made on goods, wares, and merchandise—the sheet itself contained a direction to place the valuation assessed in the personal property column, but by manifest error it was placed in the real estate column. Such clerical error could not affect the assessment. The undisputed evidence showed tax notices each year.

We overrule the third group of points.

■ Appellant specially excepted to the petition, and the schedule set forth therein, as vague and indefinite, and as not showing the amount of taxes for any of the years set forth, the rate of taxation or the valuation of the property, the property on which same was levied, or the purpose for which the levy was made, that any election was ever held to authorize any of said taxes, and particularly the school taxes, and no other facts from which it may be determined that the same constitutes a lawful tax against appellant.

■ The city's petition substantially followed the simplified form authorized by Vernon's Civil Statutes, Article 7328.1. The provisions of said article are made available to "all municipal corporations and political subdivisions of this State * * * authorized to levy and collect taxes." Section 6, Art. 7328.1. The purpose of Article 7328.1 was to simplify tax petitions, and we think the petition was sufficient under the statute. In any case, it does not appear that appellant was in any way prejudiced by the overruling of the special exception.

The judgment of the trial court is affirmed.

Affirmed.