**HUMBLE OIL & REFINING CO. et al.**

**v.**

**FANTHAM et al.**

No. 12578.

Court of Civil Appeals of Texas.

Galveston.

April 22, 1954.

Rehearing Denied May 20, 1954.

See, also, Tex.Sup., 244 S.W.2d 510.

Frank L. Heard, Jr., Houston, Rex G. Baker and Nelson Jones, Houston, of counsel, for appellant Humble Oil & Refining Co.

Bell, Dyche & Bell, James T. Wright and W. E. Dyche, Jr., Houston, for appellant R. H. Goodrich.

Butler, Binion, Rice & Cook, Houston, and Wm. C. Perry, Jr., Houston, of counsel, for appellees.

CODY, Justice.

This is an action in trespass to try title to an undivided %40ths of the minerals in a certain 96 acre tract, more or less, in Harris County, fully described in plaintiffs' pleadings and in the judgment rendered by the court. The action was instituted by M. C. Fantham and David Whittaker against R. H. Goodrich, the Humble Oil & Refining Company, and others. This is the second appeal of the case. For our opinion in the first appeal see Tex.Civ.App., 238 S.W.2d 572, which contains a full statement of the facts.

M. C. Fantham, aforesaid, is the common source of title. He acquired his title to undivided interests in the minerals under the aforesaid 96 acre tract by virtue of a deed from G. P. Beck and wife and a deed from J. P. Beck and wife, which were dated respectively August 12, 1935 and August 13, 1935. Fantham did not know the quantum of the interest which he had acquired under said two deeds, but estimated that he had acquired thereunder between five and ten royalty acres out of the 96 acre tract. This was an overestimate, and it was this overestimate which has given rise to this lawsuit. The said 96 acre tract was at that time and still is subject to a mineral lease owned by the Humble Oil & Refining Company, from which production began in 1938 and is still continuing. The reason Humble Oil Company was made a party defendant to this action was to hold it accountable for royalty payments attributable to the undivided mineral interests which plaintiffs seek to recover. The

mineral lease itself is acknowledged by all parties to be valid.

By a mineral deed dated August 13, 1935, Fantham conveyed to R. H. Goodrich "½ of all right, title, equity and interest of every kind and character" acquired by him in virtue of the aforesaid Beck deeds. After so stating the deed to Goodrich goes on to provide, "(For the purpose of calculation and insofar as the warranty of grantor herein applies, it is estimated that the interest hereby conveyed is equal to $\frac{9}{24}$ths undivided interest in and to all the oil, gas and other minerals, on, in or under, or that may be produced from the hereinabove described land; same being equal to a full 3.857 royalty acre mineral interest, more or less)." The interest which was so conveyed to Goodrich is the subject matter of this appeal. By a mineral deed which was dated August 15, 1935, Fantham conveyed to P. Battelstein "an undivided one-half of all my remaining right, title, equity and interest in and to the mineral rights acquired by me" by virtue of the aforesaid mineral deeds from the Becks. The deed then goes on to provide, "For purposes of more clearly indicating the interest herein conveyed, the following is stated: Previously I have conveyed to R. H. Goodrich an undivided $\frac{9}{24}$ths of my interest in and to said minerals, retaining an undivided $\frac{9}{24}$ths interests in and to said minerals, estimated at 3.57 royalty acres, more or less. By this instrument it is my intention to convey an undivided one half of my remaining mineral interests, estimated at being a full 1.928 royalty acres, more or less, and the warranty herein given is based on and limited to same."

P. Battelstein and those holding under him have settled their controversy with appellees since the last appeal. The deed to him was introduced in evidence by Goodrich 'for such light as it might shed on the intention of the parties to the aforesaid deed to Goodrich from Fantham. It is the contention of appellees that Fantham's deed to Goodrich conveyed only an undivided ½ interest of what Fantham actually acquired by virtue of the Beck deeds. Whereas, Goodrich contends that the Fantham deed conveyed to him an undivided $\frac{9}{24}$ths mineral interest in the 96 acre tract or 3.857 royalty acres, the purchase price having been paid on that basis. Goodrich further contends that Fantham's deed, to Battelstein conveyed the specific interest so described and warranted therein, regardless of the qualifying descriptive words "more or less." If Fantham's contention is correct, then the mineral interest which he had remaining after executing the said two deeds, was the undivided $\frac{9}{40}$ths mineral interest which appellees here sued to recover. Whereas, if Goodrich's contention is correct, the aforesaid mineral deeds to Goodrich and Battelstein undertook to convey a greater quantum of mineral interest in the 96 acre tract than Fantham had received under the two Beck deeds.

The Supreme Court reversed the judgment of this Court and held that the deeds to Goodrich and Battelstein were ambiguous (see 244 S.W.2d 510), and the Supreme Court remanded the case for a new trial. The court below, by the acquiescence of all parties, submitted the case to the jury upon a single special issue which reads, in part, omitting the definition of "intention of a party to a deed," which was given in connection with said special issue, "What interest do you find * * * that the parties to the deed from M. C. Fantham to R. H. Goodrich intended to be conveyed?"

"Answer:
"½ of what Fantham received under the Beck deeds.
"or
"$\frac{9}{44}$ interest in the land involved."

The jury answered the aforesaid special issue, "½ of what Fantham received under the Beck deeds." The court accordingly rendered judgment that appellees should recover title and possession from Goodrich to $\frac{2}{3}$ of an undivided $\frac{432}{35840}$ interest in the oil, gas and other minerals under the 96 acre tract aforesaid, describing said tract

by metes and bounds.[1] Appellants Goodrich and the Humble Oil & Refining Company are the only defendants who have appealed.

Appellants have predicated their appeal upon 4 formal points. These points complain of the court's refusal to admit certain evidence, and, in substance, boil down to this. That the court erred in excluding from the jury the testimony of appellee Fantham to the effect (1) that he had never rendered for ad valorem taxes the mineral interest, which he claimed still remained in him after he had delivered the deeds to Goodrich and Battelstein, respectively, from the date of said deeds in 1935 until he filed this suit in 1948, and (2) that he had never paid any ad valorem taxes thereon.

We must overrule appellants' points.

Under the Supreme Court's holding on the former appeal, the issue left to be determined was the fact question of whether the parties to the deed from Fantham to Goodrich intended that Goodrich should receive ½ of the interest which had been conveyed to Fantham by the Becks, or was to receive %24ths undivided mineral interest in the 96 acre tract. The intention which the parties to the deed had can be shown, of course, by a construction which they subsequently placed on the deed, at least in the absence of clear language therein indicating the intention was to the contrary. Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ. App., 160 S.W.2d 92, writ refused In Mc-Cormick & Ray's "Texas Law of Evidence" Sec. 5, 101, pp. 645, 646, the rule is stated, "Any act or conduct of a party from which it may be inferred that the facts in issue are not as he now claims may be introduced in evidence against him * * the failure of a party to render land for taxes * * * is a fact admissible on the issue of ownership." Whether the author-

ities cited in support of the text unequivocally support it or not, it is obvious that it is a correct statement of the law.

In order to undertake to show that appellees did not construe the deed to Goodrich and to Battelstein as leaving any mineral interest in the 96 acre tract in Fantham, the appellants undertook to prove by Fantham that he had never rendered for taxation the disputed mineral interest or any mineral interest in the 96 acre tract. The proceedings in which the questions were asked Fantham were out of the hearing of the jury. To the questions whether Fantham had ever rendered the disputed mineral interest for taxation or paid taxes thereon at any time prior to the filing of this suit, appellees objected. Their objection was to the effect that such questions were immaterial, irrelevant and prejudicial, and that the failure to render said interest for taxation or to pay taxes thereon did not amount to a sufficient showing either of a claim or lack of a claim of ownership thereof because the undisputed evidence showed that there was no production from the 96 acre tract before May, 1938, and for the further reason that the disputed interest was held in suspense by the Humble Company until 1945, and Fantham's testimony showed that he did not know the royalties had been released to Goodrich in 1945 until he learned it in 1948, before he filed his suit in August of that year. In answer to the questions, Fantham admitted that he had not at any time either rendered the property for taxation or paid taxes thereon. The court sustained appellees' exception and allowed appellants their bill. It is ordinarily the duty of the owner of an interest in real estate to render it for taxation. See Articles 7151 and 7152, V.A. T.S. As indicated above, failure to so render property for taxation and to pay taxes thereon, unexplained, is some evidence of the lack of claim of ownership thereof. However, appellees state in their

1. We have simplified the report of the judgment which the court rendered. Appellees also recovered ⅓ of the undivided 48⅔⁄₃₅₈₄₀ interest in the oil, gas and other minerals from a vendee of Goodrich, who was a party defendant below but who has not appealed. Further provisions of the judgment will be reported when we discuss appellees' cross-point.

brief, and appellants did not deny that Fantham conveyed his mineral interest in the 96 acre tract to a certain corporation on March 31, 1936, less than a year after he had acquired his interest therein, and which was before the expiration of the time when the statute directed him to render same for taxation. It also appears that Fantham did not receive a re-conveyance of the interest in question until April 10, 1943. It additionally appears that the discrepancy in the deeds was only discovered after oil production began from the tract in 1938, and the Humble Oil Company circularized a division order. Furthermore, the case was tried under the stipulation that appellees and their predecessors in title made demand on the Humble for payment of the royalties from the disputed interest at that time, and such demand was never withdrawn. Further, that the Humble Company held said royalties in suspense, paying them neither to Goodrich nor his vendee, nor to appellees or their predecessors. The evidence was further to the effect that the Humble after taking sufficient security released the royalties to Goodrich in 1945, but that appellees did not learn of this until in January, 1948.

■ Here, the evidence shows that appellants were contesting though not by lawsuit with appellees and their predecessors the ownership of the property in dispute from the time the royalties were carried in "suspense." Under such circumstances, in our opinion, appellants are in no position to assert that the failure of appellees and their predecessors to pay taxes or render the property for taxation amounted to conduct evidencing no claim of ownership. No contention is made that appellees were not claiming such ownership in good faith to the knowledge of appellants. Consequently, evidence of the failure of appellees to render the disputed interest for taxation and to pay taxes thereon was not available to the adverse claimant to be used as an admission against interest, or as evidence of conduct inconsistent with the claim of such ownership.

■ Appellees assert that it was a fact within the knowledge of the trial court that the taxing authorities in Harris County follow the practice or plan of not assessing for taxation non-producing mineral interests. Appellees further assert that the trial court also knew that, in practice, very few owners ever render non-producing mineral interests for taxation. Appellees further assert, in effect, that the taxing authorities of Harris County follow the practice of relying on run-orders furnished by purchasers of oil and gas and base their assessments thereon. And appellees further assert that the trial court knew that the practice of such authorities is, further, where payment on a disputed interest is shown to have been suspended by the purchaser, to withhold assessments so long as such interest is suspended. And appellees further assert that the court took judicial knowledge of such practices of the taxing authorities of Harris County. This Court can take judicial knowledge that taxing authorities sometimes follow a plan of illegally exempting certain property from taxation. See City of Houston v. Baker, Tex. Civ.App., 178 S.W. 820, writ refused; Sam Bassett Lumber Co. v. City of Houston, Tex.Civ.App., 194 S.W.2d 114. But whether or not the trial court actually knew such alleged practices of the taxing authorities of Harris County and took judicial knowledge thereof, we have no way of knowing. It is stated in Sec. 834, Vol. 3, American Jur., pp. 375–376, that "A party who depends upon the taking of judicial knowledge by the appellate court of local conditions within the judicial knowledge of the trial court should see to it that in some form that knowledge is brought into the record, since, as a general rule, if the attention of the trial court is not called to a fact within its judicial knowledge and such fact is not judicially noticed below, the appellate court will not take judicial notice of it." We further note that the questions to which the court sustained objections were not limited to the years when Fantham had title to the disputed mineral interest.

Appellees on their part urge an independent cross-point to the effect that the trial court erroneously sustained appellants' plea of limitations for all royalties which accrued prior to July 31, 1944. We consider that we do not have jurisdiction to pass on this.

 Under Rule 420, T.R.C.P., the right of an appellee to urge cross-points without taking an independent appeal is recognized by the Supreme Court. Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 370 and 371, 185 S.W.2d 427, 430. In that opinion the Supreme Court said, "Whether or not he [the appellee] would be required to file a motion for new trial the same as an appellant is not before us, for that was done in this case and the cross points are based on assignments contained therein." Rule 324 which relates to jury cases provides among other things, "A motion for new trial shall not be necessary in behalf of appellee, *except where he complains of the judgment or a part thereof.*" (Emphasis supplied.)

 The action by the appellees was in part in trespass to try title to recover a specific mineral interest. In part it was an action in debt. The judgment which was rendered thereon was severable. And the appellants only appealed from that part of the judgment which was rendered against them and upon the action in trespass to try title. We do not hold that it was necessary for the appellees to have brought up an independent appeal, but we do hold that we do not have jurisdiction to consider the independent cross-point because appellees did not file a motion for new trial complaining of the action of the trial court therein and appeal from the motion overruling the trial court's action. It is theoretically possible that the trial court would have granted the motion for a new trial.

 If we do have jurisdiction, however, of the appeal, we rule that the court's action in sustaining the pleas of limitation was correct. See Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475,

191 S.W.2d 716. The four-year statute of limitations applies insofar as appellees were seeking to recover payments due them under the mineral lease more than four years prior to the filing of their action. Appellees' contention that the Humble Company was a stakeholder of the payments for the royalty is not tenable. Had appellees filed their suit within four years from the time the first payment of royalties was due, the Humble Company would have had the equitable remedy to seek to become a stakeholder and to pay the money into the registry of the court to escape double liability.

Appellants' points and appellees' cross-point are overruled, and the judgment is in all things affirmed.

Affirmed.