William McGINNIS et al., Appellants,

v.

NORTHWEST INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 15739.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 21, 1956.

Rehearing Denied Oct. 19, 1956.

Martin & Moore and Elvin E. Tackett, Fort Worth, for appellants.

Fred H. Minor and John L. Sullivan, Denton, for appellees.

MASSEY, Chief Justice.

From a judgment denying equitable injunctive relief from the collection of school taxes, individual property owners seeking the relief appealed.

Judgment affirmed.

Prior to 1955, the taxes assessed in behalf of the Northwest Independent School District were assessed by the tax assessors of the three counties embraced within the District. These counties were Denton, Wise and Tarrant. A part of each of these three counties were, in the aggregate, the Northwest Independent School District. In 1955, the District appointed its own tax assessor and employed a tax expert who proceeded to identify and appraise the property within the District for tax purposes. This matter was put on cards and turned over to the School Board, which in turn delivered them to the tax assessor. The tax assessor saw fit to make only a very few changes in the cards prior to making her assessment of the property in the District. The tax assessor, a woman, mailed notices to all taxpayers of the 1955 tax values for assessment purposes. The assessed values were based upon 60% of the actual values for which the tax expert had appraised property within the District. In most instances, such values were greatly in excess of the values which had been used by the Denton, Wise and Tarrant County tax assessors in previous years. The disparity in values was typical of any instance where any tax unit physically re-evaluates its property subject to taxation.

The District's Board of Equalization sat as directed pursuant to provisions of Vernon's Ann.Civ.St.Tex. Article 7206. The Board received the assessor's records for use and action pursuant to prescribed procedure. As of that time, every assessment made with which we are concerned was an assessment made by the tax assessor for the property owners, since no individual owner had rendered his own property. V.A.T.S. Article 7193, provides that the tax assessor's assessment against the property listed is to be treated as valid and binding upon the property's owner as if the owner had himself listed and valued it. Undoubtedly, that is the case when the assessment is not contended to be void.

Later, at the equalization session of the Board in May, 1955, a large number of the property owners presented themselves. In essence, their concern was upon the newly assessed valuation figures as compared with those formerly used. It is apparent from the record before us that these property owners believed their taxes would be higher than formerly. In view of the unexpectedly large number of property owners who appeared, and, in view of the emotional state existing at the time of their appearance, or stimulated by the events transpiring at the site of the hearing, a great many events of interest transpired during the days when the Board of Equalization was sitting. Only a few of them will have a bearing upon the proper disposition of

the appeal. They will be disregarded except where occasion requires consideration in the disposition of the points on appeal.

Following the conclusion of the Board's duties, the tax assessor made up the tax rolls for the District. Regular procedure resulted in the receipt thereof by the tax collectors of Wise, Denton and Tarrant Counties to serve as a basis for administrative tax collection. At this time a suit for injunctive and other relief was filed by and in behalf of many of the property owners affected—in the form of a class suit. Subsequently, after the various tax collectors had sent out tax statements to all the property owners affected and after some taxes had been paid, these petitioners filed their amended original petition for relief. In the fall of 1955, on this petition, the case was tried in the District Court of Denton County, Texas. All the relief applied for was denied. Following this, many of the individual property owners, who were parties in the trial court seeking individual relief, abandoned further prosecution of the suit. Some of the property owners perfected an appeal however, and all before this court on the appeal are presently seeking individual injunctive relief. The suit, in so far as it sought relief in behalf of any class of persons, was abandoned on appeal.

Each of the three points of error presented is urged with a different set of property owners named as appellants. In other words, one group of property owners seeks reversal of the trial court under point one, an entirely different group seeks reversal under point two, and still another and different group seeks reversal under point three.

Under point two, complaint is made that the trial court erred in refusing to enjoin the collection of taxes assessed against the individuals named because the Board of Equalization failed to "hear evidence" and to fix tax values "after hearing the evidence" as contemplated and provided by V.A.T.S., Articles 7211 and 7212. It is contended that in view of the fact that the Board failed in such respects the assessed values arrived at and the taxes assessed based thereupon were arbitrary and void as a matter of law. Under point one, a like contention as to taxes being arbitrary and void was based upon the proposition that since the individual members complaining under the point had, at the equalization hearing, received offers from the Board to "settle" at figures below those of the tax assessor's renditions, the Board was without authority to revert to the tax assessor's figures upon the property owners' failure to agree and "settle" for the lower figures proposed.

Both points of error must be overruled.

Article 7211 provides that when a property owner renders his own property and the tax assessor is not satisfied with the owner's rendition the assessor shall himself render the property at the valuation he deems proper. Impliedly, the tax assessor is charged with the duty of attempting to agree with the owner upon a proper rendition, failing which the disagreement is certified to the body charged with the obligation of resolving the dispute. In the present instance, had such a dispute arisen, the proper body to hold a hearing would have been the Board of Equalization. The Board, in such instances, would be obliged to sit in a quasi judicial capacity and determine the dispute.

At such a hearing, the proper value would be prima facie established in the property owner's rendition, and, before the Board would be entitled to fix the values any higher, evidence would necessarily be required to overcome the property owner's prima facie case thereby established. Of course, the property owner would be entitled to rebut any evidence introduced to the effect that his rendered valuation was too low.

Article 7212 authorizes and directs Boards of Equalization to supervise the assessment of property within their dis-

tricts and to increase or diminish the valuation of property rendered for tax purposes, whether the rendition has been made by the property owner for himself or by the tax assessor for the property owner. In neither event would such a property owner ever have cause for complaint where the valuation of his property is diminished through action of the Board. The property owner does have cause for complaint when the valuation of his property is raised. It is only in instances provided for in Article 7211 and in such assessment-increase instances under Article 7212 that any property owner would be entitled to a quasi judicial hearing on values before the Board of Equalization. In an equitable proceeding like that of the present instance such a property owner's complaint would necessarily have to be predicated upon an action by a Board of Equalization directing an increase of valuation above the amount of the rendition. He would have no case in equity under the complaints made in points one and two because no assessment-increase was involved and no rendition made by him had been disputed by the tax assessor. He would be bound to the assessor's rendition when he has not rendered his own property, so long as the assessor honestly rendered it for him and the assessment was not illegal, arbitrary and void, etc. It is to be noted that the property owners complaining under points one and two are not therein complaining on such grounds.

■ Of course, under V.A.T.S. Article 7206, a property owner is entitled to appear before the Board of Equalization at the time it sits for the purpose of equalizing values of property within its jurisdiction. When he appears at such a meeting he is entitled to try to persuade the Board to make a correction in his assessment when he contends that the assessor, whom he has permitted to render his property for him, has erroneously assessed his property. He may be successful in his persuasive efforts or he may fail, but if he fails he is not entitled to contend that the Board failed to "hear evidence". The evidence which might be said to support the amount fixed, if based upon the assessor's figures, is the assessor's rendition made for such property owner, though actually the form of dispute requiring a solution through consideration of contradictory evidence is not before the Board at such session, it not being one to resolve the kind of dispute contemplated in Articles 7211 and 7212.

Only Article 7206 applied to the hearing attended by the property owners with respect to increasing or reducing valuations. Under such Article it would only be in an instance where the Board then decided that it has a duty of increasing the amount of valuation shown on the rendition or assessment that a situation might arise where evidence of value in contradiction of the rendition or assessment could be required.

■ Nor is any property owner's position altered as the result of receiving an offer (refused by him) from a Board of Equalization to "settle" or agree with him upon a figure below that shown on the rendition or assessment. Such an offer does not operate as a reduction. The Board would not be in any way bound merely because of having made the offer. The property owner in such an instance would be in the identical position of one who had been unable at the equalization meeting to persuade the Board to reduce the valuation below that shown on the rendition or assessment.

■ We are of the opinion that the property owners complaining in points one and two were not entitled to complain in the trial court or on appeal of the denial of the relief mentioned in the points. See the statements made relative to the appellee A. B. Jordan in the case of City of Arlington v. Cannon, 1954, 153 Tex. 566, 271 S.W.2d 414, 418–419. The tax plan of the District having been put into effect and having progressed to the point reached when

this case was tried, the property owners would be restricted to relief only as regards the amount of taxes which would be above the amount actually owed by them. Sam Bassett Lumber Co. v. City of Houston, Tex.Civ.App. Galveston, 1946, 194 S.W.2d 114, 117–118,—reversed but proposition approved at 145 Tex. 492, 198 S.W.2d 879, 880. The regularity of the tax assessor's performance of duties not being under attack, it will be presumed that she properly performed her duties. Birdwell v. City of Boyd, Wise County, Tex.Civ.App. Fort Worth, 1950, 233 S.W.2d 603. Upon that premise the values assessed by the tax assessor stand in the place of the property owners' and they are bound thereby. These values not having been raised, the complaining property owners seek no relief a court of equity could grant.

◼ Under the third point the group of complaining property owners are found contending that the trial court erred in refusing to enjoin the collection of taxes from each of them because the evidence showed that the assessments upon which such taxes were based were in amounts far in excess of the assessed valuations of other property of like quality and quantity, and far in excess of the proper values of their property. Their appeal does not have for its premise any contention that they are threatened with an illegal, arbitrary and fundamentally erroneous system and plan of taxation, as result of which they could not compute and tender proper taxes. That being true, we must view the case as one wherein they were able to make tender either in their pleadings, or at least at some time during the trial.

◼ We believe that the property owners complaining under the third point are not entitled to relief by way of injunction since they have not done or offered to do equity. They are in the position of petitioners for equitable relief in a proceeding where they not only are required to offer to do equity, but wherein they know or should know what that equity is. At the time of the filing of the amended petition upon which they went to trial they knew or should have known that the taxes charged them was 1% of the assessed values. The assessed values were 60% of the appraised true or 100% market values of their properties. They knew the values assessed, and could readily calculate 1% thereof. Since they owned the property they would be presumed to know its value. Therefore, they were in position to calculate 1% of 60% thereof in dollars and cents. They were aware before or during the trial of like information relative to their neighbors' properties. Therefore, they were in position to compute and tender in dollars and cents the amount of taxes owed under their own theory. This they did not do either in pleadings or in the course of the trial. In their pleadings they alleged that they were "ready and willing to pay their just and fair taxes * * * and are willing and ready to pay their just and fair share of the necessary taxes which the Northwest Independent School District needs * *." The respondent appellees excepted to such petition for the reason that "plaintiffs have not alleged any basis upon which they are willing to pay any taxes whatsoever to said Northwest Independent School District, and have not tendered the payment of any taxes to said school district."

◼ Under these circumstances, the trial court was entitled to treat as insufficient the offer made in the property owners' pleadings. The situation must be viewed as one wherein petitioners knew the equity (the amount admittedly due as taxes) which they should tender when pleading their case or when they later discovered it in the evidence. No tender was made. Under such circumstances, though not compelled to do so, a trial court may properly withhold the equitable relief sought. Simkins on Equity, Ch. XIII, p. 109; 1 Story's Equity Jurisprudence, 14th Ed., p. 76 et seq., sec. 69 et seq.; 2 Pomeroy's Equity Jurisprudence, 5th Ed., p. 76, sec. 393; 40 Tex.Jur., p. 194, "Taxation", sec. 138, "Offer to Pay—Tender", and cases there cited; City of Hous-

ton v. Baker, Tex.Civ.App. Galveston, 1915, 178 S.W. 820, error refused.

Our judgment in this case is not to be considered as foreclosing the right of any property owner to assert any defense which he may have to a suit for taxes brought against him in a proceeding at law.

The judgment of the trial court is affirmed.