**FEDERAL LAND BANK OF HOUSTON, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 6766.

Court of Civil Appeals of Texas.

Amarillo.

May 5, 1958.

Rehearing Denied June 23, 1958.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, B. L. Templeton, Houston, for appellant.

Richards & Ferguson, Dalhart, for appellee.

CHAPMAN, Justice.

Dallam County, acting for itself and the State of Texas, brought this suit against appellant, the Federal Land Bank of Houston for the collection of ad valorem delinquent taxes, penalty and interest for the years 1954, 1955 and 1956, assessed against an undvided one-half mineral interest owned by appellant in the east one-half of Section 63, Block 4, Capital Syndicate Subdivision of Dallam County, Texas, and to establish and foreclose a lien upon the Bank's mineral interest to satisfy such taxes, penalties, interest and court costs. Texline Independent School District was impleaded, as required by law in such cases, but made default. The case was tried to the court and judgment rendered for the State of Texas and Dallam County for a total of $8.20, penalty interest and taxes, an amount completely disproportionate to the questions of law involved.

The record before us shows that prior to 1954 Dallam County had made no attempt to separately classify mineral interests for the purpose of taxation. A few owners of severed minerals had voluntarily rendered them through the years and when so done the taxing authorities had accepted them at the values rendered and had accepted the tax payments therefor when made. Beginning in the year 1954 and continuing for all

the years thereafter, to the time of trial, severed mineral interests were placed on the tax rolls of Dallam County whether or not rendered by the owners thereof and were classified and valued at $1 per mineral acre for all mineral interests other than royalties and mineral leaseholds; 50¢ per royalty acre for all royalty interests; and $1 per leasehold acre for all oil and gas leasehold interests for the year 1954; and 75¢ per acre for the same for 1955 and 1956.

The mineral interests owned by appellant in Dallam County was stipulated by the parties. Appellant's computation based thereon shows it owned in fee one-half of the minerals under 4,023 acres; that it owned for a term of 50 years, beginning on various dates in 1940 and 1941 all minerals under 4,253.9 acres; that it owned one-half of the right to lease as to all minerals in 640 acres and that it owns one-half of one-eighth non-participating royalty in the minerals under 75,695.81 acres. Appellee, having raised no issue as to the figures just related, we may accept them as correct.

The Commissioner's Court ordered the tax assessor to place all the severed mineral interests of Dallam County on the tax rolls for the year 1954 for the first time. The assessor did so and continued to do so each year up to the time of trial of this case, and notices were sent to those owning such interests, including appellant. He sent a notice to appellant about October 1, 1954. The assessor testified, "I wrote them several times asking them to render and they wouldn't answer a letter and they didn't come back either."

In the court below appellant contended the method by which appellee assessed and levied the taxes was capricious, arbitrary, illegal and fundamentally wrong for the reasons that (1) the taxing authorities by a deliberate, arbitrary and preconceived plan assessed all severed oil, gas and mineral interests which were owned by persons not owning the surfaces of the land in and under which such mineral interests lie without assessing and levying taxes on the mineral interests owned by the persons owning the surfaces thereof; (2) the taxing authorities assessed and levied taxes on all severed mineral interests, that is, oil, gas and other minerals indiscriminately at the same value and for the same amount of $1 per acre base, wholly irrespective of the actual value of such severed minerals; (3) all severed nonparticipating oil, gas and mineral royalties not owned by the person owning the surface in the land were assessed at the same value of 50¢ per acre, irrespective of the market value of same; (4) all oil and gas leasehold estates created by oil and gas leases were assessed at $1 per acre irrespective of the value thereof; (5) the taxing authorities by a deliberate and arbitrary pre-conceived plan did not assess and levy taxes on money on deposit in banks in Dallam County and did not assess and levy taxes on the surface owners and those who owned both the surface and mineral interests thereunder in the same proportion of the values thereof as they assessed the owners of severed mineral interests, thus resulting in oil, gas and mineral interests of appellant being taxed at a greater rate and resulting in more taxes against it than would otherwise be necessary.

■■ Since no findings of fact were requested this court must consider the testimony in the light most favorable to appellees, but even in doing so the record reveals that on land of like quality there was no variation in the assessed value where any part of the minerals were separated from the surface. In other words, over the entire county, systematically, lands which had all the mineral interests in the same ownership with the surface were valued on the same basis as like quality land where part of the mineral interests were severed. Specifically, in this case Section 63, Block 4, C.S.S., in which appellant owned an undivided one-half mineral interest in the east one-half, was valued for taxes on exactly the same basis as the other sections of the same quality where all the mineral interests were intact—owned completely by the surface owners. Appellees argue in their brief

that this type of proof does not establish that the unsevered mineral interests were not valued for taxes. We cannot agree with this contention and believe the only deduction that can be made from the testimony of this case is that the taxing authorities since 1954 have systematically followed a plan of taxing severed minerals and leaving untaxed the mineral interests that are still intact—still owned by the persons owning the surface.

In substance, the record also shows that all severed mineral interests of the same type were valued respectively on the same basis throughout the county regardless of their location and actual value; that the mineral interest in controversy located in the southwest quadrant of the county was worth about $5 an acre maximum, while mineral interests in the northeast and southeast quadrants were worth from twice to three times as much; that the market value of Section 63, Block 4, C.S.S. was $45 per acre and the sections around it were approximately of the same value, or more, where all minerals were intact; that they were valued for tax purposes at $3 per acre, 1/15 of their market value, while the mineral interest here involved was valued at 1/5 of its market value.

The record shows that of the total acres in Dallam County of 866,482.55 approximately 48 per cent of the minerals were owned in common with the surface and were not valued for tax purposes separately. We also believe the only fair deduction that can be made from the record is that they were not valued for taxation by adding their market value to that of the surface. Additionally, the record shows there was on deposit in the banks of Dallam County in 1954 subject to taxation $8,768,414 not listed on the tax rolls and not taxed.

■ We are not willing to say that the system of taxation above outlined shows an intentional, malicious and prejudiced attitude on the part of the taxing authorities toward appellant or any other property owner. It is not necessary that

officers intended specifically to discriminate or injure property owners. It is sufficient that by their action they denied appellant the equal protection of the Constitution and Laws of the State. Lively v. Missouri, K. & T. Ry. Co. of Texas, 102 Tex. 545, 120 S.W. 852; Brown County Water Improvement Dist. No. 1 v. McIntosh, Tex. Civ.App., 164 S.W.2d 722; Garza Land & Cattle Co. v. Redwine Independent School Dist., Tex.Civ.App., 282 S.W. 905. The record showing that all land in the county and all mineral interests thereon had a market value, we do feel compelled to say the system above outlined did not follow statutory mandates for arriving at the value of all the property for tax purposes. It ignored market value as a basis for valuation and having done so it shows an illegal and fundamentally erroneous principal of taxation. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414. However, to obtain relief from taxes arrived at through the use of an illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; Druesedow v. Baker, Tex. Com.App., 229 S.W. 493, affirmed Baker v. Druesedow, 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569. When considered on a comparative basis we believe the record of this case shows that the valuations used show substantial injury to appellant. We have said that approximately half the unsevered mineral interests were not taxed. Considered in the light most favorable to appellees the surface of the land was taxed at only about half the value as the severed mineral interest here involved was taxed. Additionally, almost $9,000,000 in the banks of the county subject to taxation was not taxed. Certainly it is taxable, despite the practical difficulties encountered in doing so. Whelan v. State, 155 Tex. 14, 282 S.W.2d 378.

■ The mere fact that the money on deposit in the banks of Dallam County was not taxed or that the unsevered mineral

interests were not taxed does not of itself make the tax system complained about herein illegal. The law is well settled that a taxing unit does not lose its right to taxes justly owing on one portion of property merely by reason of failure of its officers, either negligently or designedly, to assess other property that is likewise taxable. Sam Bassett Lumber Co. v. City of Houston, 145 Tex. 492, 198 S.W.2d 879; Whelan v. State, 155 Tex. 14, 282 S.W.2d 378; City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414. However, the failure to tax such large segments of taxable property, as shown in this case, should be considered on the question of discrimination and the question of substantial injury. Assuming, as we must, that the budgetry needs of the taxing units were met by the rate adopted and levied on the assessed valuations, the addition of the bank deposits, at their full value, as required, the addition of the unsevered minerals, and the addition of the surface interests at the same proportion of their values as the mineral interest in controversy, and all mineral interests owned by appellant in the county, would necessarily result in a substantial reduction of appellant's taxes. Therefore, we believe appellant has met the burden of proof, on a comparative basis, to show substantial injury to it in the system of taxation used by Dallam County since 1954.

█ Through testimony offered, and in their arguments by brief, appellees have contended that appellant's failure to render or pay taxes on its cash on deposit in Texas banks and on promissory notes held by it contributed to show appellant was not substantially injured. In support thereof they proved the Bank owned promissory notes secured by deed of trust liens on real estate situated in Dallam County of an approximate total unpaid balance of $400,000, of which approximately $39,000 constituted Vendor's Lien notes additionally secured by the Vendor's Lien and superior title to real estate situated in Dallam County. They also proved that on January 1, 1954,

appellant had on deposit in banks of Texas more than a million dollars. We cannot take the property just mentioned into consideration in passing on the question of discrimination or substantial injury for the reason that the Bank, being an agency and instrumentality of the Federal Government, is exempt from payment of taxes except on real estate. 12 U.S.C.A. § 931; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Federal Land Bank of New Orleans v. Grasland, 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703; Federal Land Bank of St. Paul v. Bismark Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65; Reconstruction Finance Corp. v. State of Texas, 5 Cir., 229 F.2d 9; Roth v. Conner, Tex.Civ.App., 25 S.W.2d 246; Art. 7147, Vernon's Annotated Civil Statutes; Hall v. Miller, 102 Tex. 289, 115 S.W. 1168.

█ It follows from what we have said above that we consider the system of taxation heretofore described and discussed showed an illegal and fundamentally erroneous plan and system. The deliberate adoption of a plan for the omission from the tax rolls of a large volume of property, personal or real, is in direct contravention of constitutional and statutory provisions for equality and uniformity of taxation. Such a plan results in the rankest kind of discrimination between taxpayers. It does not lie with local taxing authorities to say that certain classes should bear the entire burden of ad valorem taxation. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414. We feel compelled to say further that appellee should not hope to justify such system in the courts against a proper contest and a complete showing. Just as appellees are at fault in their system of taxation, pointed up by this record, appellants are at fault in attempting to avoid the payment of any taxes on their more than 80,000 acres of various type mineral interests, if indeed by the defense of this suit such is their purpose. Conversely, if by the defense of this suit appellant seeks only to call attention to the sys-

tem of taxation used in Dallam County since 1954, to the end that such may be altered to conform to a fair and equitable program of taxation as required by Article 8, Section 1 of the Constitution of Texas, Vernon's Ann.St. and the Fourteenth Amendment to the Constitution of the United States it may be rendering a just service. But the fact does remain that we have a suit for delinquent taxes and foreclosure of a tax lien where appellant has not rendered its property for any amount, has not shown the assessor the courtesy of a reply to his notice, has not appeared in any manner to contest the system it complains about until suit was filed against it, has not to this day, so far as we can tell from the record, admitted any liability for any taxes on its mineral interests in Dallam County and has tendered no taxes into court based on its conception of a fair valuation.

Though a property owner is not limited to the remedies of mandamus and injunction in his defense against taxing units putting into effect an illegal and fundamentally erroneous plan of taxation, Howth v. French Independent School District, Tex.Civ.App., 115 S.W.2d 1036, when he sits idly by and permits such plan to go into effect, then attempts to defend the collection of the tax, he assumes a much more onerous burden. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; McGinnis v. Northwest Independent School District, Tex.Civ.App., 294 S.W.2d 154. Appellant is in that unenviable position in this case. Article 7329 R.C.S., titled, "Defense to tax suits" provides:

"There shall be no defense to a suit for collection of delinquent taxes, as provided for in this chapter except:

"1. That the defendant was not the owner of the land at the time the suit was filed.

"2. That the taxes sued for have been paid, or

"3. That the taxes sued for are in excess of the limit allowed by law, *but this defense shall apply only to such excess.*"

It will be noted that the last clause of Subdivision 3 provides, "but this defense shall apply only to such excess." By brief, appellant asserts this clause, "is but a variation of Subdivision 3 which would purport to apply only to a situation where the taxes sued for were claimed to be in excess of the limit allowed by law, i. e. a situation where the tax rate used was in excess of the rate allowed by law as a situation where statute or law fixed a rate at $1.50 per hundred dollars valuation and a rate of $1.75 per hundred dollars valuation had been applied."

We believe the authorities are against the contention of appellant just quoted, and we believe properly so. There is no question but that appellant's mineral interests are subject to tax on some basis and that it owes for that amount. Our Supreme Court, speaking through Judge Folley has said:

"The court of civil appeals held that the right of a property owner to relief against an assessment made in violation of the constitutional guaranty of equality of taxation is limited to the excess over and above the amount properly assessable on an equality basis, which is the limit expressly fixed in subdivision 3 of article 7329, Vernon's Ann.Civ. St." Sam Bassett Lumber Co. v. City of Houston, 145 Tex. 492, 198 S.W.2d 879, 880.

A case even stronger in its statement is City of Wichita Falls v. J. J. & M. Taxman Refining Co., Inc., Tex.Civ.App., 74 S.W.2d 524, 529 (writ refused). The court there said:

"We believe it is clearly deducible from all the decisions that the right of relief from assessments made in violation of the constitutional guaranty of equality of taxation, or the denial of the due process of law clause in the

Fourteenth Amendment of the Federal Constitution, in failing to give the owner an opportunity to be heard on a proposed assessment, is limited to the excess over and above the amount properly assessable on an equality basis; which is the limit expressly fixed in subdivision 3 of art. 7329, Revised Civil Statutes of this state."

See, also, McGinnis v. Northwest Independent School District, Tex.Civ.App., 294 S.W.2d 154. Further, we do not understand the case of Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 to hold contrary to the rule just discussed, as contended by appellant. We find no evidence of probative value in the instant case by which the trial court could have found appellant met this burden of proof. In any event, the trial court, as trier of the facts, was justified in holding the evidence was insufficient to meet the burden of proof in this respect. As a matter of fact, appellant made no effort to defend on this basis but has sought to avoid the payment of any of the taxes sued for.

The taxing authorities took judgment for taxes, penalties and interest. To the extent of the amount of penalties and interest the judgment is erroneous. Our Texas Statutes authorizing collection of penalties and interest from a delinquent taxpayer is a penalty statute, and the penalties and interest authorized thereunder are no part of the tax which Congress permits to be assessed against real property. Reconstruction Finance Corporation v. State of Texas, 5 Cir., 229 F.2d 9. The record shows that the total amount of the judgment rendered was $8.20. The taxes amounted to $6.17, the cost $1 and the penalty and interest $1.03. In its oral argument appellees tendered a remittitur of the penalty and interest. Accordingly, the judgment of the trial court is reformed to make the judgment read for $6.17 for taxes, and as reformed affirmed.

On Appellant's Motion for Rehearing.

In our original opinion we held that the clause "but this defense shall apply only to such excess" as used in Subdivision 3 of Article 7329 should be interpreted to mean that one against whom the tax is sought to be collected could defend only as to the excess over and above the amount properly assessable on an equality basis, and unless the amount properly assessable on an equality basis was proven the judgment would stand.

In its motion for rehearing appellant insists we were in error in that part of our opinion just mentioned because in holding that Dallam County since 1954 has been operating under an illegal and fundamentally erroneous plan of taxation, and appellant having established substantial injury, that the judgment would have been based on an illegal and void levy and assessment, would have been in an incorrect amount and therefore void.

A more mature consideration and study of this question has convinced this writer that to the extent just mentioned our former opinion was incorrect. We believe our other pronouncements of the law were correct in our former opinion and that the judgment in the case will have to be reversed for the reasons hereinafter stated.

In 9 Tex.Jur., Ten Yr. Supp., Section 122a at page 102 it is said, "Where, upon appeal, a tax levy is adjudged void, the appellate court should reverse and render judgment for the taxpayer, but without prejudice to the right of the taxing authority to reassess the taxpayer's interest in the land and to collect taxes due thereon."

In State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076 our Commission of Appeals has held that where the board of equalization had adopted an arbitrary method and scheme for fixing valuations, which resulted in an unjust discrimination against the taxpayer the assessments thus made were void, and the collection of the taxes based on such assessments could be successfully resisted by defendant. Our original thinking was that a successful resistance would have to constitute proof of the excess over and above the amount properly assessable

on an equality basis and that the taxing units could recover for the full amount sued for in the absence of such proof.

In a case written when the present Article 7329 R.C.S. was Article 7689a R.C.S., with the exact same wording, the San Antonio Court of Civil Appeals in Vance v. Town of Pleasanton, 261 S.W. 457, at page 459, in discussing said article said:

"If the statute has the effect of depriving the property owner of defenses vouchsafed to him under the due process or other provisions of the state or federal Constitutions, then, of course, to that extent the legislative act is void and ineffectual. For instance, if a town or city should levy and assess and endeavor to collect taxes upon property situated without the corporate limits of the municipality, then clearly the property owner could plead and prove that fact as a defense in a suit brought against him to enforce collection of the taxes, notwithstanding the statute in question precludes such defense.

"So, also, would such statute be ineffectual to cut off an injured property owner from showing that a tax is materially out of proportion to the value of the property taxed, or that it was not equal or uniform with the taxes assessed against like property of others, because these defenses are guaranteed to the citizen in article 8, § 1, of the state Constitution, in which it is provided, that 'taxation shall be * * * uniform,' and that all property 'shall be taxed in proportion to its value.' "

In State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 572, our Supreme Court said, in speaking of boards of equalization, " * * * no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, *or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation."* (Emphasis added.)

One of the latest expressions of our Supreme Court concerning defenses against taxing units seeking judgment for delinquent taxes is found in Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 384. In that case the trial court refused to receive evidence offered for the purpose of showing an arbitrary plan or scheme of taxation and the court of civil appeals affirmed the case. The Supreme Court reversed both courts, saying, 'If petitioners can show substantial injury on a retrial by reason of the omission of taxable bank deposits from the tax rolls they will be entitled to judgment setting aside the assessment for the years 1950, 1951 and 1952 and to a reassessment of their properties by taxing authorities on an equal and uniform basis under Article 7346, V.A.C.S., * * *." Thus it appears that where the system of the taxing authorities is based on an illegal and fundamentally erroneous plan of taxation and where the one against whom the taxes are sought to be collected has shown substantial injury from such plan, both of which conditions we believe to be present in this case, the assessment itself is void as being in violation of both the state and federal constitutions, and any judgment based thereon would be void. State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076; Rowland v. City of Tyler, Tex.Com. App., 5 S.W.2d 756; City of West University Place v. Home Mortgage Co., Tex.Civ. App., 72 S.W.2d 361; Whelan v. State, 155 Tex. 14, 282 S.W.2d 378; Bashara v. Saratoga Independent School District, 139 Tex. 532, 163 S.W.2d 631; 9 Tex.Jur., Ten Yr. Supp., Section 122a at page 102.

This writer comes to the conclusion just made with much reluctance because no tax system can possibly be completely free of some discrimination and injustice and because every reasonable inference should be resolved in favor of the validity of the levy and assessment of taxes in order that the state and its subdivisions depending upon the revenue therefrom may have the funds with which to render the services required of them. However, we

have come to the conclusion that the law requires a reversal and that the State of Texas and Dallam County will ultimately be benefited more by relevying and reassessing the property in accordance with our holdings herein and in compliance with the requirement of the statutes and constitutions than they would to continue to litigate this and any other such similar actions as might hereinafter be filed. Accordingly, the judgment of the trial court is reversed and rendered that appellees take nothing on their judgment for $8.20 but without prejudice to the right of the taxing units to relevy and reassess the property in question upon a fair and equal basis with property of like kind and value in the county and to collect taxes thereon.