BLEWETT et al. v. RICHARDSON INDE-
PENDENT SCHOOL DIST. et al.
(No. 309–3656.)

(Commission of Appeals of Texas, Section A.
May 10, 1922.)

1. Schools and school districts ⬤➡103(1)—
Taking assessment lists by county assessor
held not to bar subsequent higher assessment
by district assessor.

Where the county assessor, in taking the regular assessment lists from the taxpayers, made notations thereon which would enable him to make the assessment for an independent school district as he had done in the past, though he had not been requested by the district to make such assessment, the taking of such lists was not, in view of Rev. St. arts. 7547, 7551, 7564, 7576, 7577, 7580, and 7582, a completed assessment by the county assessor within article 2862, forbidding a higher valuation for school purposes than for state and county purposes when the assessment is by the county assessor, and does not prevent the subsequent assessment at higher valuations by a school district assessor.

2. Schools and school districts ⬤➡103(1)—
District assessor de facto officer before tak-
ing oath and giving bond, and assessments
made by him not void.

Where an independent school district, which contained the requisite number of scholastics to entitle it to separate administration of its affairs, including the power and manner of taxation under Rev. St. arts. 938–964, 2853, 2856, had regularly elected a district assessor and collector of taxes as authorized by article 2891, the assessor, who had assumed the powers of the office and begun the discharge of its duties, was a de facto officer, though he had not taken the oath or given the bond required by article 2861, and the assessments made by him were not void.

3. Taxation ⬤➡312—De facto assessor may
make valid assessment.

A de facto assessor may make a valid assessment of taxes.

4. Schools and school districts ⬤➡103(1)—As-
sessment of district property held in substan-
tial compliance with statutory requirements.

Where a district assessor took the county assessor's list as returned before the district assessor's election, corrected the errors therein, and fixed his own valuations, after which he submitted the list to the taxpayers for signature, and the equalization board mailed notice to those refusing to sign the lists that their property had been returned as unrendered by the assessor and gave them notice to appear before the board at a meeting, which was not held at the exact place stated in the notice, but was held adjacent thereto, and there was no showing that any taxpayer was thereby deprived of an opportunity to appear before the board, there was a substantial compliance with the statutory requirements for assessment contained in Rev. St. arts. 940–943, 947, 949, and 950.

5. Taxation ⬤➡336(2)—Property of taxpayers
who refused to sign assessment lists was
properly returned as unrendered.

Where certain taxpayers of an independent school district refused to exercise their right to prepare assessment lists and submit them to the assessor, under Rev. St. art. 940, but elected to stand on assessment lists previously rendered by them to the county assessor, who was not authorized to assess for the district, the district assessor properly listed and returned the property of such taxpayers as unrendered.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Taxation ⊛336(2)—Taxpayers are charged with knowledge of the law authorizing assessors to return unrendered property.**

Even though taxpayers who refused to submit assessment lists of their property to the assessor of an independent school district failed to receive the notice mailed to them that their property had been returned as unrendered, they were charged with knowledge that Rev. St. arts. 942, 943, 947, 949, authorized the assessor to list their property as unrendered and to submit such lists to the equalization board for consideration.

**7. Schools and school districts ⊛103(1)—Assessment of property may exceed assessment for county taxation.**

Where the property in an independent district is assessed for district taxes by a district assessor, the fact that the values fixed by him exceeded the values fixed in the assessment lists returned to and accepted by the county assessor did not affect the validity of the assessment, there being evidence that the valuation fixed in the district assessments was about 25 per cent. of the actual cash market value, and that the values of the different tracts were as nearly equal and uniform as they could be made.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by C. H. Blewett and others against the Richardson Independent School District and others to enjoin the collection of school taxes. Judgment for defendants was affirmed by the Court of Civil Appeals (230 S. W. 255), and plaintiffs bring error. Affirmed.

C. F. Greenwood, of Dallas, for plaintiffs in error.

Hiram F. Lively, of Dallas, for defendants in error.

GALLAGHER, J. Richardson independent school district was duly incorporated and had for many years levied and collected annually a tax for school purposes. Prior to the year 1919 said district had never had an assessor and collector of taxes, and its taxes had each year been assessed by the county assessor and collected by the county collector of taxes. It was shown by the minutes of the school board that the county officers were annually requested by resolution to assess and collect the district school taxes, except for a few scattered years where such minutes showed no action on the subject. No resolution was introduced requesting the county officers to assess and collect the school tax until otherwise ordered, but each resolution by its terms applied only to the then current year. The county tax collector was not requested by resolution or otherwise to assess the district school taxes for the year 1919.

The county tax assessor in assessing the school taxes for said district did not take separate assessment lists, or rendition sheets,

from the taxpayers, nor did he prepare a separate tax roll for the district. It was his custom and the custom of his deputy to note on each list rendered for the purpose of state and county taxation, covering property in said school district, the name of said district, and when he prepared the general tax roll he calculated the school tax thereon and placed the amount in a separate column on such roll.

Prior to the 1st day of May, 1919, he or his deputy had secured assessment lists from practically all of the taxpayers of his county, and the lists covering property in said district were so indorsed.

On the 13th day of May, 1919, the school board of said district appointed J. H. Heffington assessor and collector of taxes for said district. On the same day the board notified the county tax assessor of such appointment and requested him to waive any claim against the district for what he had done toward assessing taxes for said district for the year 1919. The county assessor replied, making the waiver requested and tendering any assistance he could render. He did nothing further toward assessing the school taxes for said district, and did not calculate such taxes nor enter them on the tax rolls against the owners of property in said district.

The district assessor and collector of taxes, after his appointment, went to the office of the county tax assessor and copied the assessment lists as rendered by the property owners of said district. He revised the lists when he found errors therein, and revalued practically all of the property. He took the assessment lists prepared by him, with values as fixed by him inserted, to the taxpayers of the district and requested them to sign the same. 146 taxpayers signed the assessment lists so tendered. The first lists were signed in August, and the last lists in December, 1919, but nearly all who signed these lists did so in September and October. About 80 taxpayers refused· to sign the assessment lists so tendered. In each such case he marked the lists "Refused to render," and submitted all said lists, both signed and unsigned, to the board of equalization for the district. He then mailed notices to all who refused to sign such lists, notifying them to appear before the board of equalization. There· is some complaint that the board of equalization did not meet in the building designated in the notices, but it did meet somewhere near, and there is no serious contention that anybody who wanted to go before the board did not have an opportunity to do so. Some of the parties who refused to sign the assessment lists so tendered went before the board, and some failed or refused to do so.

The equalization board met for the first

---

time on December 4, 1919. It revised some of the valuations, and then approved the lists and returned them to the district assessor, who calculated the amount of the taxes and prepared the assessment or tax rolls for the districts. The property situated in the district was, in the main, valued much higher on the district rolls than the valuation placed upon the same by the owners in the assessment lists returned by them to the county tax assessor, but in most instances, at least, not near its actual or market value. The members of the equalization board testified that the values fixed were as nearly equal and uniform as they could be made.

The roll was made out in December after the changes in value made by the equalization board and approved by that board on December 31, but it was not verified by the district assessor and collector until January 24, 1920. Heffington, the district assessor and collector, neglected to take the oath of office as such until January 9, 1920, and he did not give an official bond until that date.

C. H. Blewett and about 80 others, plaintiffs in error, brought this suit in the district court against the said school district and the members of its board of trustees and its said assessor and collector of taxes, defendants in error, to enjoin them from collecting, or attempting to collect, any taxes from plaintiffs in error on the increased valuations fixed by the district assessor and approved by the district board of equalization, and asked the court to declare all such proceedings illegal and to cancel the same. They pleaded their willingness to pay school taxes on their respective properties for said year 1919 at the valuations contained in the assessment sheets rendered by them to the county tax assessor. A temporary injunction was granted.

There was a trial before the court, and judgment rendered that plaintiffs take nothing, and that permanent injunction be denied. The Court of Civil Appeals affirmed the judgment. 230 S. W. 255.

The Supreme Court granted a writ of error on the application of Blewett and his colitigants.

[1] Plaintiffs in error contend that the signing by them of the assessment lists tendered by the county tax assessor or his deputy and the acceptance of the same by said officer constituted a valid assessment of their property for taxation for the year 1919 for all purposes, and rendered any and all subsequent action by the officers of the school district in attempting to assess them and their property for school taxes for said year null and void.

The statute provides that, when a majority of the board of school trustees of an independent school district prefer to have the taxes of the district assessed and collected by the county assessor and collector, the same shall be assessed and collected by said county officers. It is provided that in such cases the property in such district shall not be assessed for school purposes at a higher valuation than for state and county purposes. Rev. Stats. art. 2862. So far as this statute applies to the assessment of property it evidently contemplates a completed assessment. The taking of assessment lists from the taxpayers does not in itself constitute an assessment. Such action is only the first step in making an assessment. We quote from Welty on the Law of Assessments as follows:

"These lists, whether made out by the taxpayer or the assessor, constitute the first step in making an assessment for taxable purposes. The list, when made, does not constitute the assessment, but, as before stated, is the initial proceeding in the making of an assessment; it serves as a basis or as information to the assessor from which he is enabled to make the assessment."

The statutes of this state prescribe the procedure in making an assessment for state and county purposes. They provide that, when the county assessor has secured assessment lists from the taxpayers, as far as he is able to do so, he shall make a list of all unrendered property and assess the same at its true value. He is then required to submit the assessment list to the commissioners' court for equalization, the court being required to meet for that purpose on the second Monday in May, or as soon thereafter as practicable. When that court has equalized the value of the property so listed and approved said assessment list, he is required to make out the assessment or tax roll therefrom. This roll should contain the names of all taxpayers, and a list of the taxable property of each within the county, the rate of taxes applied to such values, and the amounts thereby ascertained carried into such columns as the statute requires. He is then required to submit the same to said court as a board of equalization for final correction and approval. Such rolls are then ready to turn over to the tax collector for collection, and the work of the assessor is complete. Rev. Stats. arts. 7547, 7551, 7564, 7576, 7577, 7580, and 7582; Welty on the Law of Assessments, pp. 6, 11, and 12; State v. Farmer, 94 Tex. 232, 235, 59 S. W. 541; Prentice v. Ashland County, 56 Wis. 345, 347, 14 N. W. 297; Levy v. Wilcox, 96 Wis. 127, 130, 70 N. W. 1109; Jackson Lumber Co. v. McCrimmon (C. C.) 164 Fed. 759, 763, 764.

The tax collector of Dallas county did not take separate assessment lists of the property of said district. The lists he did take were primarily for state and county purposes. The taxpayers did nothing more in ren-

dering such lists than they were required to do, and doubtless would have done, if the school board had elected a district assessor and collector of taxes and notified the taxpayers of the district, as well as the county assessor, of such action on or prior to January 1 of that year. The district had not requested the county tax assessor to assess the school taxes for them. The fact that in making his assessment for state and county purposes he made such notes as would have enabled him to calculate the school taxes of the district for that year, and enter the same upon the general tax rolls of the county against the owners of property in said district, did not constitute an assessment within the meaning of the law. Any further action looking to the assessment of the school tax having been abandoned by him, his acts in the premises constituted no bar to the proper exercise of the taxing power by the district through its own tax assessor and collector.

[2] Richardson independent school district contained the requisite number of scholastics to entitle it to separate administration of its school affairs, and was by statute vested with all the powers, rights, and duties in regard to establishing and maintaining free schools, including the power and manner of taxation for free school purposes conferred by law on the council or board of alderman of incorporated cities and towns. Rev. Stats. arts. 2856, 2853. The manner of taxation so provided for the board of trustees of independent school districts is set out in articles 938 to 964, inclusive, of the Revised Statutes, and said articles furnish the rule of procedure except when some particular statute controls. Article 2891 of the statutes provides for the election of a district assessor and collector of taxes, and article 2861 provides that he shall give bond as such. The assessor and collector of taxes did not take the oath of office nor give the required bond until January 9, 1920. It is contended that such failure to take the oath of office and give bond rendered the assessment made by him void. He was regularly chosen as such officer, and there is no claim that he was in any way disqualified. In pursuance of his selection he assumed the powers of the office and began the discharge of the duties thereof, and so continued until he did, in fact, qualify. These facts constitute him a de facto officer, and the assessments made by him were not void on account of his failure to take the oath of office and give bond prior to the making of the same. Oden v. Sinton Independent School District (Tex. Com. App.) 234 S. W. 1092. The assessments made by the purported district tax assessor in the case just cited were held void because he at the time held another office which he had no purpose to relinquish, but to which he "tenaciously held," and it appeared that his

failure to take the oath of office and give bond was for the purpose of evading the constitutional prohibition against the holding of two separate offices at the same time.

[3] That a de facto assessor may make a valid assessment of taxes is well established. T. & P. Ry. Co. v. Harrison County, 54 Tex. 119, 123; Clegg v. State, 42 Tex. 605, 607; 37 Cyc. 984; 22 R. C. L. p. 593, § 313.

[4] It is further contended in this connection that the assessment of the school tax for said year by said district assessor was so informal and irregular as to be void and unenforceable. The provisions of law concerning assessing property for taxation in incorporated cities and towns, to which provisions independent school districts are required to conform, are much less specific than the provisions of the statutes concerning assessment of property for state and county purposes. There is no statute directing when the assessment shall be made, nor when the board of equalization shall meet, nor when the rolls shall be prepared and approved. All these matters are left to be regulated by the local authorities. The assessor is authorized, but not required, to call upon the taxpayers to solicit a rendition of their property. These statutes contemplate the publication of notice to the taxpayers to return their lists of property, and that in response thereto they shall prepare and transmit their lists to the assessor. R. S. arts. 940 and 941. They further contemplate that the assessor shall list all unrendered property and submit such lists to the board of equalization, and that the board shall equalize the values of all the property rendered, whether listed by the taxpayers or by the tax assessor, and that the taxpayers shall have notice and opportunity to appear before such board before the values fixed on their respective properties in the assessment lists are raised by such board. R. S. arts. 942, 943, 947, 949, and 950.

[5, 6] No notice to the taxpayers to render lists of their property was published, but the district assessor did call on practically all of them, and ask them to sign lists of their property, upon which property values had been placed by him. They thus had actual notice that an assessment was about to be made. They had a right to prepare assessment lists and submit them to the assessor. R. S. art. 940. None of plaintiffs in error did so. On the contrary, the majority of them seem to have denied his authority to make an assessment and to have elected to stand on the assessment lists rendered by them to the county tax assessor and to try to force the district assessor and the other authorities of the district to accept the same. Their property remained unrendered, and the act of the district assessor in listing it and returning it to the board as such was proper. Notice was mailed to each of the

owners of unrendered property to appear before the board. If any of plaintiffs in error failed to receive the notice so mailed, they knew their property had not been rendered by them to the district assessor and were charged with knowledge of the fact that the law authorized the assessor to list the same as unrendered and to submit such lists to the equalization board for consideration. R. S. arts. 942, 943, 947, and 949; Moody v. City of Galveston, 21 Tex. Civ. App. 16, 50 S. W. 481, 482; San Antonio v. Hoefling, 90 Tex. 511, 39 S. W. 918. They were afforded an opportunity to appear before the board. It did not meet in the actual building named in the notice, but it met somewhere near, and there is no contention that any of them who really desired to go before it were prevented from doing so because they could not find the place where it was sitting. The members of the board of equalization testified that the values were as nearly equal and uniform as they could be made. The statute makes their action final. R. S. art. 953; Duck v. Peeler, 74 Tex. 268, 271, 11 S. W. 1111.

[7] There was testimony that the values fixed by the assessor and approved by the board were about 25 per cent. of the actual cash market value of the property so valued. The fact that the values so fixed exceeded the values given such property in the assessment lists rendered to the county assessor by the owners did not affect the validity of the assessment. Avery v. Cooper, 107 Tex. 483, 484, 180 S. W. 734. The fundamental requirements of a valid assessment were substantially complied with. We think the contention of plaintiffs in error that the assessment of said school tax for said year by said district assessor is void is not well founded.

We recommend that the judgments of the district court and the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.