**SEGUIN INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**Jane W. BLUMBERG et al., Appellees.**

**No. 14441.**

Court of Civil Appeals of Texas.

San Antonio.

April 13, 1966.

Rehearing Denied May 11, 1966.

J. C. Hinsley, Austin, for appellants.

Denver E. Perkins, Gonzales, Edgar Engelke, Seguin, for appellees.

CADENA, Justice.

Appellees, Jane W. Blumberg, individually and as independent executrix of the estate of H. H. Weinert, deceased, and Hilda B. Weinert, a widow, filed this suit against appellants, Seguin Independent School District, its Board of Trustees, and its Assessor and Collector of Taxes, to set aside assessments placed on appellees' lands for 1964 property tax purposes by the school district's board of equalization. Appellants filed a cross-action for the taxes due under such assessments.

The trial court rendered summary judgment setting aside the assessments and ordering the school district to accept, in full payment of the 1964 taxes, the amounts tendered by appellees on the basis of the valuations contained in their sworn renditions. In addition, appellants were enjoined from attempting to collect taxes based on the cancelled assessments.

On April 16, 1964, appellees handed to the tax assessor their sworn renditions of the lands herein involved. These renditions, which were based on a valuation of approximately $6.00 an acre, declared the value of the Blumberg and Weinert lands, for tax purposes, to be $14,460.00 and $69,500.00, respectively. The assessor received the renditions without expressing any objection to, or disagreement with, such valuations.

Subsequently, the board of equalization notified appellees in writing to appear before the board on June 18, 1964, at which time the board would "hear cause" why the valuation of the Blumberg lands should not be raised to $48,190.00, and that of the Weinert lands to $224,930.00. The depositions of the members of the board of equalization make it apparent that the proposed increases in valuation were based on the theory that no land within the school district had a reasonable cash market value of less than $50.00 an acre. Since it was the practice of the school district to assess land at 40% of its cash market value, the result of the application of this theory was that no land would be assessed at less than $20.00 per acre. All lands which, like the Blumberg and Weinert lands, had been assessed in the past at a lower figure were to be assigned an assessed valuation of $20.00 an acre for 1964 tax purposes.

Appellees, through their agents, appeared before the board and protested the proposed increases. While there was a general discussion concerning the valuation of the lands for tax purposes, no sworn testimony was heard by the board. Some time after this meeting appellees were notified that the proposed increases had been adopted by the board.

The school district began collecting its taxes on October 1, 1964. On November 12, 1964, appellees made an unconditional tender of amounts based on the valuations contained in their renditions, in payment of 1964 taxes. The tax assessor-collector refused such tender, and on that same day this suit was filed. The amount previously tendered was deposited in the registry of the court.

The first question we must consider is whether the failure of the tax assessor to disagree with the valuations contained in appellees' renditions made such valuations conclusive, disabling the board of equalization to increase such valuations.

Article 7211 [1] provides that if an assessor is satisfied with a person's rendition of property for taxation, he shall list the same accordingly. If, however, the assessor disagrees with the value set out in the rendition, "he shall at once place on said rendition opposite each piece of property so rendered an amount equal to the reasonable cash market value of such property at the time of its rendition, * * *."

Art. 7211 is a part of Title 122. The language of the statutes found in Title 122 makes it apparent that such statutes were designed primarily to regulate the assessment and collection of State and county taxes. On matters of taxation, independent school districts, cities and towns are governed generally by the provisions found in Chapter 5 of Title 28. Blewett v. Richardson Independent School Dist., 240 S.W. 529 (Tex.Com.App., 1922). Appellees insist, however, that Article 7211 controls the actions of school district assessors because Art. 1060a, which is a part of Title 28, Chapter 5, recites that the provisions of Title 122 "are made available * * * to all school districts and municipal corporations * * *." This argument disregards the fact that Article 2791 expressly recites that school district assessors "shall have the same power and shall perform the same duties * * * that are conferred by law upon the assessor and collector of taxes in and for any incorporated city, town or village, * * *." Under Article 2791, then, it is plain that the procedures to be followed by school district assessors are to be found in Title 28, Chapter 5, rather than in Title 122. Blewett v. Richardson Independent School Dist., supra; Republic Insurance Co. v. Highland Park Independent School Dist., 141 Tex. 224, 171 S.W.2d 342, 347 (1943). Title 28, Chapter 5, contains no provisions requiring that the tax assessor object to, or disagree with, the valuations contained in the taxpayer's rendition.

1. All statutory references are to Vernon's Annotated Civil Statutes.

■ Even if it be assumed that Art. 7211 is applicable to this case, the inaction of the school district's assessor would not have the effect for which appellees contend, nor are the powers of boards of equalization as circumscribed as appellees would have us hold. Even under the provisions of Title 122, a board of equalization has the power, on its own motion and without awaiting complaint from the tax assessor or from any other person, to raise assessments even where the taxpayer has filed a sworn rendition which was accepted without objection by the tax assessor. Brundrett v. Lucas, Tex.Civ.App., 194 S.W. 613, wr. ref.; Feldman v. Bevil, Tex.Civ.App., 190 S.W.2d 157, wr. dism., w. o. m.

■ As we view the record in this case, it establishes conclusively that the board of equalization, in raising the valuation of appellees' lands, heard no sworn testimony from any source. It is the contention of appellants, supported by affidavits and depositions of the members of the board of equalization, that the members of the board had available information which supported their determination of the question of value. There are decisions to the effect that the members of a board of equalization may consider their own experience and knowledge of the particular property and of values generally. See Exporters & Traders Compress & Warehouse Co. v. City of Marlin, Tex.Civ.App., 130 S.W.2d 860, wr. dism., j. c. However, we believe that the better-reasoned decisions are those which hold that, where the owner has filed a sworn rendition, the board of equalization must, before it increases the valuation, hear testimony under oath as to the proper valuation of the property, unless the taxpayer, by failing to appear in response to notice, waives this requirement. Brundrett v. Lucas, supra; Wells Independent School Dist. v. St. Louis Southwestern Ry. Co., Tex.Civ. App., 324 S.W.2d 442, wr. ref., n. r. e.; Bexar County v. Humble Oil & Refining Co., Tex.Civ.App., 213 S.W.2d 882, wr. ref., n. r. e.; Earnest v. Standefer, Tex.Civ.App., 54 S.W. 228, no wr.

■ Appellants seek to distinguish such holdings on the ground that all such cases involve instances where the protesting taxpayer, at the board hearing, offered sworn testimony in support of his rendered valuation, and in which the board, without producing evidence in support of its own valuation, merely disregarded the taxpayer's testimony. Since, in this case, appellees produced no sworn testimony at the hearing, appellants insist that the board was under no duty to hear any sworn evidence. The effect of appellants' contention would be to place upon a rendering taxpayer, at a hearing where a board of equalization is considering an increase in the valuation, the burden of coming forward with sworn testimony in support of his rendition. We do not believe that the statutes, or the cases which appellants seek to distinguish, contemplate the imposition of such a burden upon the taxpayer. At the hearing before the board, the proper valuation is prima facie established by the sworn rendition, and the board cannot fix the valuation any higher without producing evidence to establish the prima facie case established by such rendition. McGinnis v. Northwest Independent School Dist., Tex.Civ.App., 294 S.W.2d 154, wr. ref., n. r. e.

■ The action of the board of equalization in raising the valuation of appellees' lands without hearing sworn testimony was, therefore, invalid.

■ However, even though the board of equalization acted illegally, the trial court erred in rendering summary judgment for appellees. Appellees' petition contains no allegations, nor did appellees file any affidavits or produce other evidence, indicating the actual reasonable cash market value of their lands. On the other hand, the school district filed affidavits reciting that the reasonable cash market value of the lands was equal, at least to the amounts which were used as a basis for the assessments adopted by the board. In this state of the record, it is apparent that appellees, having waited until the school district's taxation

program for the year 1964 had been put into operation and the school district had been collecting 1964 taxes for more than six weeks, failed to discharge their burden to show substantial injury as a result of the board's action. Milligan v. Corsicana Independent School Dist., Tex.Civ.App., 381 S.W.2d 97, wr. ref., n. r. e.

The applicable rule is stated in Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 380 (1955), as follows: "But the mere fact that taxing authorities arbitrarily disregard the true and legal basis of arriving at assessed valuations does not, of itself, entitle a litigating taxpayer to relief. To be entitled to relief he must also show that the arbitrary or unlawful plan or scheme of arriving at assessed valuations resulted in substantial injury to him. * * * City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 417." See also Milligan v. Corsicana Independent School Dist., supra; Montgomery County v. Humble Oil & Refining Co., Tex.Civ.App., 245 S.W.2d 326, wr. ref., n. r. e.

Appellees contend that the "substantial injury" rule applies only where complaint is being made that the taxing agency has assessed according to a "plan" or "scheme" which is fundamentally erroneous, and the rule is inapplicable here. In support of their contention, appellees rely on Wells Independent School District v. St. Louis Southwestern Ry. Co., supra, wherein the Texarkana Court apparently held that where the board of equalization has raised the taxpayer's valuation without hearing evidence, there is substantial injury as a matter of law. In so holding, the Court relied on the conclusion of the Supreme Court in State v. Whelan, supra, that the taxpayer was entitled to introduce testimony which tended to show that he had, in fact, suffered injury as the result of the board's invalid action. It is difficult to understand how a holding that a litigating taxpayer is entitled to introduce evidence showing substantial injury can support the conclusion that he can succeed in his suit without showing such injury.

The precise question before us was considered by the Commission of Appeals in Zachry v. City of Uvalde, Tex.Com.App., 42 S.W.2d 417 (1931). There, as appears from the opinion of the Court of Civil Appeals (24 S.W.2d 517, 518), the taxpayer had rendered the property for taxation. His principal complaint before the Commission of Appeals was that the board, in raising his rendered valuation, had acted "arbitrarily and unfairly" in that no investigation had been made as to the reasonable market value of the property. In holding that the taxpayer was not entitled to relief, the Commission of Appeals said that the valuation placed on the property by the board could not be "set aside merely because at the time it was made the board of equalization made no investigation as to the value of the property." Before the taxpayer may complain, he must show that his property "has been valued unfairly or in excess of the value of other property similarly situated." Since the evidence in the case merely showed that the taxpayer, when notified of the proposed increase in valuation, filed a written protest and asked the board to investigate, "the presumption will be indulged that the board of equalization discharged its duty by placing a fair value" upon the property. 42 S.W.2d at p. 419.

The decision in Montgomery County v. Humble Oil & Refining Co., supra, also supports our conclusion. There, after Humble had rendered its property for taxation, and in the absence of any disagreement on the part of the tax assessor, the board of equalization raised the valuation of the Humble properties. Humble complained that the board, in reaching its decision, disregarded all of the evidence adduced during the hearing before the board. The trial court held that the board's action was invalid, and enjoined the collection of taxes based on such increased valuation. The Court of Civil Appeals dissolved the injunction, holding that, in the absence of evidence as to the fair market value of the

property involved, there was no proof that Humble had been injured.

It is true that the application for writ of error in the Montgomery County case was stamped "Refused, no reversible error," but, as the Supreme Court pointed out in State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954), the only question presented in the application concerned the necessity of showing injury. It follows, therefore, that the application could not have been refused unless the Supreme Court agreed that the burden rested on Humble to make proof of injury by showing the market value of its properties. 265 S.W.2d at p. 575.

The situation in the Montgomery County case was strikingly similar to the circumstances of this case. The property owner had rendered, and the rendition had been accepted by the tax assessor without objection. The board of equalization then, without producing testimony in support of its action, raised the rendered valuation. The result of this raise in valuation was that the Humble properties were assessed at between 20% and 25% of their market value, while all other properties were assessed at from 10% to 15% of their market value. Here, appellees contend that the result of the board's action was to value their lands, for tax purposes, at 40% of their market value, while other lands were assessed at 15% of their market value. The only distinction between the two cases is that in the Montgomery County case the board disregarded the undisputed testimony as to the market value of the Humble lands, while here the board heard no testimony whatever. Unless we are to hold that action in the absence of testimony is somehow more reprehensible than action which disregards all testimony, the distinction is immaterial. In either case, the action of the board is without support in the evidence.

■ It is apparent that in this case the board of equalization acted in the same manner as did the board in Montgomery County. Here the board adopted a "plan or scheme" under which all land within the district which had been previously assessed at less than $20.00 an acre would be assigned a taxable value of $20.00 per acre. The result of the adoption of this plan was to assess appellees' lands at a higher percentage of market value than was applied to other lands. In Montgomery County the board singled out oil properties for separate treatment and assigned to them an assessed valuation based on a higher percentage of market value than that used as a basis for assessing other properties. It is not necessary, in order to have an invalid "plan or scheme," that the fundamental error inherent in the plan permeate and render invalid all assessments. The assessment of different classes of property at different percentages of market value constitutes a fundamentally erroneous general plan of taxation. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954).

■ The trial court also erred in holding that the school district was bound to accept payment of taxes calculated on the basis of the valuation set out in appellees' renditions. The holding of the trial court finds support in the following language from State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076, 1078 (1935): "It is well settled that if a rendition of property be made by the owner, and if the board of equalization by adopting some arbitrary standard, or by failing to hear evidence, or in some other respect fails to follow the provisions of the statute * * *, fixes a value that is illegal and is afterwards set aside, the taxpayer's original rendition prevails as a basis upon which taxes are to be paid."

The precise holding in Richardson, to the effect that in a suit for the collection of taxes, if the valuation set by the board of equalization is set aside, the taxpayer's original rendition as a basis upon which taxes are to be paid, was expressly overruled in Electra Independent School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645 (1943).

Appellees contend that the Richardson rule is still applicable to suits which seek to enjoin the collection of illegal taxes. The Supreme Court, in Republic Ins. Co. v. Highland Park Independent School Dist. of Dallas County, 129 Tex. 55, 102 S.W.2d 184 (1937), cited the Richardson language with apparent approval. The Republic case was, like this case, a suit to enjoin the collection of taxes, and the Court approved the action of the trial court in holding that the taxpayer's rendition was the basis for the collection of taxes where the board of equalization had acted illegally. Republic was decided prior to the decision in Electra. Further, the statement concerning the effect of the rendition was unnecessary to the decision in the case, since the taxing agency was ordered to accept payment of taxes on the basis of the taxpayer's rendition which had been properly approved by the board of equalization. The vice in Republic lay in the fact that, after the rendition had been approved by the board of equalization, the taxing agency had sought to increase the valuations fixed by the board. It was this increased valuation, not made by a duly constituted board of equalization, which was set aside.

In Electra, the Supreme Court, after noting that the only authorities cited in Richardson in support of the holding concerning the finality of a rendition were suits to enjoin the collection of illegal taxes, said: "Whether such a rule is properly applied in an injunction case we need not now determine."

To permit reassessment by the taxing agencies in this case would work no greater hardship on the taxpayer than does the rule, approved by the Supreme Court, which allows such reassessment where the suit is one for the collection of delinquent taxes. There is nothing inherent in the nature of an injunction suit which compels giving to the rendition a finality and conclusiveness which it does not enjoy in a suit for the collection of taxes.

The latest case which we have found concerning the right of the taxing agency to reassess where the collection of taxes illegally assessed has been enjoined is Nelson v. Blanco Independent School Dist., Tex.Civ.App., 390 S.W.2d 361, no writ. There the Court, after holding that the taxpayer was entitled to a permanent injunction restraining the collection of taxes illegally assessed, expressly said that the judgment would be without prejudice to the right of the school district "to again assess and value the property of appellants in accordance with law and to collect such taxes as may be due thereon." 390 S.W.2d, p. 367.

Art. 7346 gives to taxing agencies, whenever any assessment has been held invalid for any reason by a district court in a suit to enforce the collection of taxes, the right to re-assess the property in question. In this case, at the time appellees' motion for summary judgment was heard, unpaid 1964 school district taxes had become delinquent, and the school district, by amended pleadings, had filed a cross-action seeking recovery of the taxes in question. We have before us, then, a case which is both a suit for the injunction of the collection of taxes and a suit for the collection of such taxes. Nothing could be gained from an attempt to determine whether this case partakes more of the nature of a tweedledum or a tweedledee. The fact that appellees arrive at the courthouse before the school district cannot be made determinative, since the 1964 taxes did not become delinquent until February 1, 1965. Under these circumstances, it must be concluded that this case is a "suit to enforce the collection of taxes" within the meaning of Art. 7346.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.