**FAYETTEVILLE INDEPENDENT
SCHOOL DISTRICT et al.,
Appellants,**

v.

**J. B. CROWLEY et al., Appellees.**

**No. 12306.**

Court of Civil Appeals of Texas,
Austin.

Oct. 1, 1975.

Rehearing Denied Oct. 22, 1975.

Robert J. Adam, Adam, Adam & Anderson, Inc., Houston, for appellants.

Richard T. Halpain, Hart & Halpain, La Grange, for appellees.

O'QUINN, Justice.

Appellees as landowners brought this action in September of 1974 to set aside raises in property values attempted by the board of equalization of the Fayetteville Independent School District for the year 1974 with respect to a certain class of rural property. Appellees alleged also that suit was brought as a class action in behalf of all other taxpayers similarly situated. As a basis for the suit, appellees alleged that the board of equalization raised the values of all rural property, in tracts consisting of ten acres or more, above the values rendered by the owners or assessed by the assessor, without written notice to the owners as required by statute.[1]

At the conclusion of the evidence before a jury, the trial court granted appellees' motion for an instructed verdict, discharged the jury, and entered judgment setting aside the action of the equalization board and enjoining the school district from collecting taxes on valuations in excess of the valuations previously rendered or assessed for 1974. The school district, its board of equalization, and the tax assessor have appealed. We will affirm the judgment of the trial court.

The trustees of the school district, in response to a request from the board of equalization for guidance on valuation of rural property, advised the board, by resolution adopted in May of 1974, that all rural tracts of land should be valued on the basis of $300 per acre for tracts of one to five acres, $150 per acre for tracts of more than five but not more than ten acres, and $100 per acre for all rural tracts in excess of ten acres. The resolution was amended later, in June of 1974, without affecting the recommended value of tracts larger than ten acres. The valuations challenged in this lawsuit involve only the rural tracts in excess of ten acres.

Prior to April 30 of 1974 the assessor received renditions from most of the taxpayers, who rendered their property at the same value placed on it for 1973. The assessor placed all unrendered property on the lists at 1973 values. Rural tracts in 1973 varied in valuation from $28 per acre to $90 per acre. The record shows that the rural tracts were owned by about 505 different taxpayers.

In the latter part of July, 1974, the board of equalization for the school district met and revalued all rural tracts in excess of ten acres at $100 per acre. This action had the effect of raising the value of all rural tracts above the values appearing on the lists or books of the tax assessor. None of the appellees appeared at the meeting of the board of equalization, and no other taxpayer appeared or was heard "regarding the value of this rural land."

It is undisputed that although notice of the July meeting of the board of equalization was published in a newspaper and announced by radio, "no individual written notice [was] given to any of the rural owners of the land." At the conclusion of the

1. Appellants who were defendants below are Fayetteville Independent School District, the Trustees of the District, the Board of Equalization of the District, and the Tax Assessor for the District; appellees are J. B. Crowley, L. H. Moore, and Roy R. Euton, individually, and in a representative capacity for and on behalf of all other persons of the same class and similarly situated. The trial court dismissed the Property Owners Protection Association as a party plaintiff below, and the Association is not an appellee.

meeting in July, members of the board of equalization signed and delivered the tax rolls to the assessor, and the board adjourned without fixing a subsequent date for hearing property owners on the increased valuations and without directing that notices be mailed to the owners according them to opportunity to be heard.

■ In assessing taxes of independent school districts the assessor must perform the duties of office under the same statutes controlling the actions of assessors of taxes for general law cities and towns. Section 23.91, Texas Education Code (derived from Art. 2791, Vernon's Anno.Civ.Sts.); *Seguin Independent School District v. Blumberg*, 402 S.W.2d 552, 554 (Tex.Civ.App. San Antonio 1966, writ ref. n.r.e.).

■ The controlling statutes, therefore, for assessing taxes in independent school districts are the articles found in Title 28, chapter 5, V.A.T.S., and, unless adopted by a school district, the statutory articles of Title 122, designed primarily to apply to taxes for state and county purposes, are not applicable. *Skinner Corporation v. Calallen Independent School District*, 409 S.W.2d 929, 933 (Tex.Civ.App. Corpus Christi 1966, no writ); *Seguin Independent School District v. Blumberg, supra.* Section 23.93(d) of the Code requires that assessments by the assessor *"shall be equalized by a board of equalization* appointed for that purpose by the board of trustees of the independent school district. *When assessments are so equalized*, the assessor-collector shall prepare the tax roll of said district." (Emphasis supplied)

The required procedure, when values are raised by the board of equalization, is prescribed by Article 1053 of Title 28:

"In *all cases where the board of equalization shall raise the value of any property appearing on the lists or books of the assessor*, they *shall*, after having examined such lists or books and corrected all errors appearing therein, *adjourn to a day not less than ten nor more than fifteen days from the date of adjournment*, such day to be fixed in the order of adjournment, and *shall cause the secretary of said board to give written notice to the owner of such property or to the person rendering the same of the time to which said board has adjourned*, and that such owner or person rendering said property *may at that time appear and show cause why the value of said property should not be raised.* Such notice may be served by depositing the same, properly addressed and postage paid, in the city post office." (Emphasis added)

Under the mandatory precept of the statute, it is clear that when the school district's board of equalization raised the value of rural tracts above the rendered and assessed values already on the books of the assessor, the board was required to adjourn its meeting to another day, not less than ten nor more than fifteen days later, and to give written notice, which could be mailed, to all landowners affected by the raise, advising them of the subsequent day on which they might appear and be heard if they objected to the raise in values.

■ After raising the rural values, the board adjourned without setting a time for protests and without giving written notice to each landowner affected by the raises of a later time when objection would be heard by the board. The Supreme Court in 1954 held that: "As to those [landowners] who were not given the required notice and did not waive it by voluntary appearance, the Board of Equalization acquired no jurisdiction to raise the values at which their property was rendered." *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416 (1954). It appears from the record that not one of the individual appellees, nor any other landowner within the class of more than 500 represented, was notified in writing prior to the July meeting of the board when the raises were attempted, and none appeared. No one was given an opportunity thereafter to appear, as the board adjourned its July meeting without providing a later hearing as required by Article 1053.

Appellants contend that the doctrine of *Cannon* is inapplicable in this case because (1) appellees knew in advance when the board of equalization would meet in July and had the right to appear in opposition to adoption of any tax plan suggested by the board of trustees, and (2) ". . . by subsequent appellate court holdings, the rule as announced in *City of Arlington v. Cannon* has been changed and/or modified."

Neither contention is sustainable. Appellants apparently assume, under their first contention, that if appellees knew when the board would meet and did not appear, appellees waived their right, or were estopped, to object later to the board's action attempting to raise the value of rural tracts.

▉ It is settled law that a board of equalization is a quasi-judicial body, charged with inspection, correction, equalization, and approval of assessments made by the assessor. *Pritchard & ˙ Abbott v. McKenna*, 162 Tex. 617, 350 S.W.2d 333 (1961); University of Texas, Yudof, The Property Tax in Texas, 51 Texas L.Rev. 885, 892–3 (1973); Baylor University, Tackett, Remedy for Unjust and Unfair ad Valorem Tax Assessment, 11 Baylor L.Rev. 363, 367 (1959); 54 Tex.Jur.2d, Taxation, sec. 103, p. 267 (1975 PP).

Notice required under Article 1053 is comparable to notice of a judicial proceeding. Tackett, in Baylor Law Review, *supra*, stated the principle in this language:

"All cases discussing the function of the Board of Equalization refer to such Board as a 'quasi-judicial' body. Facts of value found by the Board partake of the same characteristics as a finding of fact by a trial court. Just as notice is required in a judicial proceeding before an adjudication is binding, so it is required to be given when the Board of Equalization intends to put a greater tax burden on the property owner than that which already exists." (11 Baylor L.Rev. 367)

The rule stated by the Supreme Court in *Cannon* is explicit and without qualification that as to those property owners "not given the required notice and did not waive it by voluntary appearance, the Board of Equalization *acquired no jurisdiction* to raise the values at which their property was rendered." (Emphasis supplied) Without notice given in the manner required by Article 1053, the board's attempt to raise values at which appellees rendered their property was void for want of jurisdiction. The principle stated in *Cannon* in 1954 was not novel, but a teaching established earlier, as indicated by the Court. *City of San Antonio v. Hoefling*, 90 Tex. 511, 39 S.W. 918 (1897); *City of El Paso v. Howze*, 248 S.W. 99 (Tex.Civ.App. El Paso 1923, writ ref.). For later application, see *City of Houston v. Union City Transfer*, 307 S.W.2d 645, 649 (Tex.Civ.App. Houston 1957, no writ).

Appellants' second contention, in an effort to avoid the holding in *Cannon*, is that somehow the rule has been changed, or modified, by later "appellate court holdings." Five of the six holdings relied on are by courts of civil appeals. The holding of the Supreme Court in the sixth case is that notice by publication in newspapers was insufficient to give a Houston property owner actual notice of a hearing to determine costs to be assessed for street improvements. (*City of Houston v. Fore*, Tex., 412 S.W.2d 35, 39). The first of the holdings by courts of civil appeals, in *City of Houston v. Union City Transfer, supra*, followed both *Cannon* and *Hoefling, supra*, in striking down two raises attempted by a board of equalization, when required notice was not given, and upholding only an increased assessment by the assessor in a year the property was unrendered. (307 S.W.2d 649, col. 1). We have examined the remaining holdings relied on and find that the courts of civil appeals have not in any manner sought to change or modify the holdings of the Supreme Court in *Cannon* or *Hoefling*, or its approval of *Howze*. The integrity of *Cannon* appears unblemished.

Appellants also contend on appeal that under the principle of *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569 (1954), appellees should be required to show substantial injury if they are to obtain relief from taxes imposed on values above the values rendered. The argument is that, "It is unusual to say the taxing agency may violate the constitutional and/or statutory method in establishing values of properties and be upheld if the taxpayer cannot show he was substantially harmed, but if a procedural point was not followed in exact detail, the action will be set aside no matter if the taxpayer was harmed or benefited."

In *Whittenburg* the Court held, "When the attack is made because the board followed an arbitrary plan or scheme of fixing values, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one but also that the use of the plan worked to his substantial injury." (265 S.W.2d 573, col. 2). It is interesting to note that the justice who stated the rule in *Whittenburg* in 1954 nine months later, in 1954, also stated the rule of the Court in *Cannon*. The difference between the two decisions, of course, lies in the basic principle of jurisdiction, not on "a procedural point . . . not followed in exact detail."

We are not concerned here with an attack upon the school district's attempt to adopt a scheme or plan of taxing rural property, or that the plan resulted in inequalities of taxation among the owners of the various tracts. Appellees as plaintiffs below did not contend, and do not on appeal contend, that the values as raised were in excess of market value, or that market value was not used, or that injury resulted to them by reason of irregularities in the tax plan and levy.

The position of appellees is that the equalization board's action, in raising values without giving the required notice and opportunity to be heard, rendered void raises the board attempted to make. Appellees say that the board of equalization did not acquire jurisdiction to raise the values above renditions and assessments shown on the assessor's record.

Appellees were not required to show injury resulting from an action which was void for want of jurisdiction.

In considering preliminary motions early in the trial of this case, the court dismissed a voluntary group of 36 persons designated the "Property Owners Protection Association," but declined to disallow the suit as a class action brought by appellees for themselves and in behalf of more than 500 owners of rural tracts containing more than ten acres.

■ Appellants bring a point of error under which they challenge the trial court's ruling permitting the class action. The record fails to disclose that appellants complained of the court's action in motion for new trial, as required by Rules 324 and 325, Texas Rules of Civil Procedure. The ruling of the trial court must be considered as acquiesced in by appellants and may not be attacked on appeal.

The trial court permanently enjoined the Fayetteville Independent School District from "collecting any school taxes for 1974 on rural land of more than 10 acres levied on the increase in valuation . . . that is on school taxes in excess of an amount computed by using the rendered value . . . or the value assessed by the Tax Assessor . . . on or prior to April 30, 1974 . . . ." The court made provision in the judgment for payments under protest and for voluntary payments by taxpayers in disregard of the judgment, and prescribed procedures for payments under protest and for refunds.

We find no error in the judgment and overrule all points of error under which appellants have appealed.

The judgment of the trial court is in all things affirmed.

Affirmed.