**CRYSTAL CITY INDEPENDENT SCHOOL DISTRICT et al.,**
**Appellants,**

v.

**B. K. JOHNSON et al., Appellees.**

No. 908.

Court of Civil Appeals of Texas,
Tyler.

March 18, 1976.

Rey Perez, Crystal City, for appellants.

Emerson Banack, Jr., Edward Kliewer, III, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellees.

MOORE, Justice.

This suit was instituted by B. K. Johnson; Sun Oil Company, a Delaware Corporation; and Warren Wagner, et al., for themselves and for all others similarly situated against the Crystal City Independent School District, its tax assessor-collector, school trustees, and the members of the Board of Equalization for the school district. The plaintiffs sought an injunction against the collection of a certain portion of the 1974 ad valorem taxes levied against their property. They alleged that the assessment was illegal and void on the ground the Board of Trustees of the school district allegedly increased the assessment ratio from 50% to 60% thereby increasing the assessed value of their property by 20% after the Board of Equalization had met and set the taxable value and finally adjourned. After a trial before the court, sitting without a jury, the

trial court entered judgment permanently enjoining defendants from collecting taxes based on the valuations fixed by the Board of Trustees. The judgment recited that the action of the Board of Trustees in increasing the assessed value from 50% to 60% was illegal and void and ordered the tax-collector to accept payment of taxes on the basis of certain values set forth in the judgment. The school district duly perfected this appeal.

We reform and affirm.

The record is before us by way of a stipulation. The material facts are as follows: (1) Appellees are landowners or oil and gas lessees situated within the school district. (2) The Board of School Trustees appointed a Board of Equalization and all appellees whose taxable valuation was increased for the year 1974 by the assessor-collector were given notice to appear before the Board of Equalization on July 10, 1974. (3) All appellees who received notice that the taxable value of their property was to be increased, met with the Board of Equalization on July 10, 1974, and reached agreed valuations. (4) The Board of Equalization, after having finished its hearings, finally adjourned on July 10, 1974. (5) On August 19, 1974, the Board of Trustees of the school district met at a special budget meeting. At this meeting the trustees passed a resolution increasing the assessment ratio from 50% to 60% of the market value on all property on the tax rolls, thereby increasing the assessed valuation of all property by 20%. The 20% increase in taxable value affected all taxpayers in the school district. (6) None of the appellees received any notice prior to the August 19, 1974, meeting notifying them that the Board of Trustees would consider increasing the assessment ratio and thereby increasing the assessed value of their property, nor did they receive notice that the school board intended to consider raising their taxes. (7) The notices posted of the August 19, 1974, school board meeting recited only that notice was given that the school board would conduct a budget hearing on that date. (8) Thereafter, the tax assessor-collector mailed out tax statements based on the increased assessment and this was the first notice the taxpayers received notifying them of the action of the Board of Trustees increasing the assessment ratio resulting in an increase of the taxable value of their property. (9) After receiving the notice of the increase, some of the taxpayers notified the tax assessor-collector that such increase was invalid and requested that the Board of Equalization be re-convened and that they be given an opportunity to appear and protest the raise. Their request was refused.

By its first point of error the school district contends that since there is no statute regulating the right of school districts to increase the assessment ratio on property lying within the district, the Board of Trustees was clothed with discretionary power to increase the assessment ratio at any time it saw fit, so long as the increase did not exceed 100% of the cash-market value. Therefore, the district contends that the action of the Board of Trustees in increasing the assessed ratio was a valid legislative function of the Board even though it had the effect of increasing the taxable value by 20% above that fixed by the Board of Equalization. We cannot agree with this proposition.

■ Our statutes contemplate that all property shall be assessed for taxes "at its true and full value," but as a matter of fact, this is not always done. Article 7174, Tex.Rev.Civ.Stats.Ann.; *Robertson v. Connecticut General Life Ins. Co.*, 140 S.W.2d 936, 941 (Tex.Civ.App.—Waco 1940, no writ) citing *Lively v. Missouri K. & T. Ry. Co. of Texas*, 102 Tex. 545, 120 S.W. 852 (1909). Frequently a taxing authority will determine in advance that a certain tax rate when levied on a certain percentage of the total market value of all property in the taxing district will be sufficient to produce enough revenue to meet its budget and as a result the taxing authority will set the assessment ratio. The tax assessor-collector then assesses property on the basis of such ratio and such assessment is valid, if uniformly applied. *City of El Paso v. Howze*, 248 S.W. 99 (Tex.Civ.App.—El Paso 1923,

writ ref'd); *Robertson v. Connecticut General Life Ins. Co.*, supra.

The legislature has provided the means to enforce uniform taxation. Articles 7148 and 7161, Tex.Rev.Civ.Stats.Ann., provide for the rendition of taxation by the taxpayer of the value of merchandise and personal property in his hands sometime after January 1 of each year. Article 7193 provides that the assessor of taxes shall assess the property for the taxpayer, if he fails to render it. Article 7212 provides for a Board of Equalization to supervise and equalize the assessment of taxes, and to fix the final valuation. Article 1060 makes the above statutes applicable to school districts. Thus, the Board of Equalization has been established as the final authority in establishing the taxable valuation of property within an independent school district. *City of Waco v. Conlee Seed Co.*, 449 S.W.2d 29 (Tex.1969).

It is now settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on the valuation fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. *State v. Houser*, 138 Tex. 28, 156 S.W.2d 968, 970–971 (1941); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 572–573 (1954); *City of Waco v. Conlee Seed Co.*, supra.

In the case at bar appellees-taxpayers do not attack the valuations fixed by the Board of Equalization. Rather, they seek to sustain the values fixed by the Board of Equalization and to pay their taxes based on such valuations. The attack here is on the legislative order of the Board of School Trustees made on August 19, 1974, increasing the tax assessment ratio on all property, thereby increasing the assessed value of the property by 20% over and above that previously fixed by the Board of Equalization.

We hold that the order of the Board of Trustees of August 19, 1974, upon which the assessor acted in increasing the values is invalid. The valuation fixed by the Board of Equalization was a quasi-judicial act and was not subject to increase except by the Board of Equalization after notice and hearing. The valuation of property is a quasi-judicial function of the Board of Equalization of the School District and such function cannot be usurped by the Board of School Trustees acting in its legislative capacity. *City of El Paso v. Howze*, supra. Therefore, we perceive no error in the action of the trial court in striking down the order of the School Board attempting to raise the taxable valuation of all property in the District.

By its second point appellants contend that the trial court erred in ordering the District to accept taxes based on certain valuations after having declared the plan or scheme of taxation to be void. The portion of the judgment complained of is as follows:

"It is accordingly ORDERED, ADJUDGED and DECREED that the 1974 plan and scheme of taxation of Defendants is fundamentally illegal and void in that the increase by Defendants of the assessed valuation from fifty to sixty percent was done without notice to Plaintiffs.

"It is further ORDERED that the Tax Assessor-Collector of the Crystal City Independent School District shall accept from the Plaintiffs and other taxpayers the following amounts which when paid shall constitute payment in full by Plaintiffs of their 1974 Crystal City Independent School District taxes:

(1) Those Plaintiffs and other taxpayers who rendered their property in 1974 shall pay taxes based on the assessed valuation contained in their sworn renditions.

(2) Those Plaintiffs and other taxpayers who did not render their property in 1974 shall pay as their taxes an amount equal to the amounts tendered in payment of their 1973 taxes.

(3) Those Plaintiffs and other taxpayers who reached agreed assessed valua-

tions with the Board of Equalization shall pay taxes based on such agreed assessed valuations."

The School District construes the judgment to mean that the trial court found that the plan or scheme of taxation adopted by the Board of Equalization was illegal and void. Based on this premise the District argues that the trial court erred in ordering the District to accept taxes based on values set by the court. It argues that the court should have permitted the District to again bring the matter before the Board of Equalization for re-assessment in accordance with Article 7345, Tex.Rev.Civ.Stats. Ann. The vice in appellants' argument is that the major premise is without foundation. Contrary to appellants' contention the trial court did not set aside or hold that the assessments fixed by the Board of Equalization were void. Viewing the judgment as a whole, it is apparent that the vice which the trial court sought to remedy was the action of the School District in increasing the valuations fixed by the Board of Equalization after all tax values had been approved by the Board of Equalization. It was only this increase in valuation, not made by the Board of Equalization, that was set aside. This case does not involve a situation where the court has set aside the assessed valuations approved by the Board of Equalization and the court orders the assessor-collector to accept taxes based on the taxpayers rendition.[1]

In view of the fact that appellees are not complaining of the action of the Board of Equalization, we are of the opinion the assessed values approved by the Board of Equalization became final and were binding on the taxpayers and the School District alike. *Republic Ins. Co. v. Highland Park Ind. Sch. Dist.*, 129 Tex. 55, 102 S.W.2d 184 (1937). The trial court was therefore correct in granting the injunction restraining the attempted increase in valuation and reassessment by the Board of Trustees, and correctly ordered the District to accept tax payments based on values agreed upon by the taxpayer and the Board of Equalization recited in subparagraph (3) above. We have concluded, however, that subparagraphs (1) and (2) of the foregoing recitation are erroneous and should be deleted. Since appellees do not complain of the values set by the Board of Equalization, the judgment should have ordered the assessor-collector to accept taxes from all taxpayers, except those mentioned in subparagraph (3), based on valuations set by the Board of Equalization as shown on the tax rolls approved by the Board. *Republic Ins. Co. v. Highland Park Ind. Sch. Dist.*, supra. Accordingly, the judgment is so reformed and as reformed affirmed. Rule 454, Texas Rules of Civil Procedure.

Reformed and affirmed.

---

1. For a discussion of the proper procedure to be followed where assessed valuations set by the Board of Equalization is held to be void, see *Sequin Independent School District v. Blumberg*, 402 S.W.2d 552 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.).